[No. 57484-7. En Banc. March 19, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC L. COLLICOTT, *Appellant*.

*Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

SMITH, J. — This is a review of a resentencing hearing held on remand from this court to the Snohomish County Superior Court. The trial court was directed to redetermine Appellant Eric L. Collicott's offender score under the Sentencing Reform Act of 1981 upon his pleas of "guilty" to first degree burglary, first degree rape and first degree kidnapping. After the resentencing hearing, appellant filed another appeal in the Court of Appeals, Division One, alleging that at the resentencing hearing, the sentencing judge again erroneously calculated his offender score and improperly imposed an exceptional sentence. By order dated August 14, 1990, Mr. Collicott's appeal was certified to this court by the Court of Appeals. We accepted review.

We now set aside our prior decision in *State v. Collicott*[1] (*Collicott* I) for reasons stated later in this opinion, and again remand the case for resentencing under the Sentencing Reform Act of 1981 (RCW 9.94A) and consistent with our decision in *State v. Dunaway*.[2]

On April 27, 1989, this court rendered its plurality decision in *State v. Collicott*.[3] The facts stated in that opinion remain unchanged and are recited in this footnote.[4]

---

[1]112 Wn.2d 399, 771 P.2d 1137 (1989).

[2]109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987).

[3]112 Wn.2d 399, 771 P.2d 1137 (1989).

[4]"On December 12, 1985, petitioner pleaded guilty to first degree burglary under RCW 9A.52.020, first degree rape under RCW 9A.44.040, and first degree kidnapping under RCW 9A.40.020. As part of the plea, Mr. Collicott stipulated to the admissibility of the victim's statement, as well as her interview with a police detective, as material facts for the court to consider in sentencing. These documents provide us with a glimpse at the underlying facts of the case.

"Eric Collicott broke into the Yokefellow Counseling Center (the Center) in Lynnwood in the early morning hours of September 28, 1985. Mr. Collicott apparently began collecting electronic equipment inside the building. Sometime during this activity, he made a loud crashing noise.

"The noise awoke the victim, sleeping in one of the Center's bedrooms. She had arrived earlier that night and had arranged with the Center's staff to spend the night there in preparation for doing work the next day. Half awake, she

In *Collicott* I, appellant sought review of an unpublished opinion of the Court of Appeals, Division One.[5] The Court of Appeals had determined that his conviction for first degree burglary, first degree rape, and first degree kidnapping did not constitute the "same criminal conduct" for the purpose of determining his offender score under RCW 9.94A.360. The Court of Appeals also observed that "the trial judge found that the offenses did constitute the same criminal conduct."[6]

This court in *Collicott* I reversed the Court of Appeals and remanded the case to the trial court "to redetermine

---

walked out into the hallway to investigate and saw Mr. Collicott standing in front of an opened closet. She asked him who he was and what he was doing. Mr. Collicott appeared to be extremely intoxicated and gave an incoherent answer, so the victim led him to a nearby couch and sat him down. She thought he might have been one of the Center's residents.

"The victim went to the front of the building to see if the door was open. She saw there a pile of electronic equipment, noticed that the front office had been burglarized, and tried to use the office phone to call the police. The phone did not work. The victim went back to the living room to a phone she knew was operative.

"As she entered the living room, Mr. Collicott came from behind and hit her over the head with a table lamp. He showed her that he had a knife, which the victim later said looked as though it was taken from a kitchen. He grabbed her hair, led her into the bedroom, and ordered her to give him money and the keys to her car. He tied her hands and feet and gagged and blindfolded her. Mr. Collicott then went out of the room and loaded up the electronic gear into the victim's car.

"Mr. Collicott returned to the bedroom and raped the victim. He then took her to the car, got into the driver's seat with the knife on the floor near him, and drove off. He told her that he was going to drive somewhere to get a gun. After arriving at this destination, Mr. Collicott left the victim in the car while he went inside. He took the keys with him. The victim remembered that she kept an extra car key in a magnetized container under the car. She worked her hands loose, got out and found the key, got in the driver's seat, and drove away as quickly as possible. She eventually was able to contact the police." *Collicott* I, at 400-02.

[5] *State v. Collicott*, 50 Wn. App. 1046 (1988).

[6] *State v. Collicott*, Court of Appeals cause 18238-2-I (Jan. 25, 1988), slip op. at 2.

the petitioner's offender score."[7] We denied a motion for reconsideration.[8]

The case is again before this court upon certification from the Court of Appeals, Division One, by order dated August 14, 1990, principally for determination of the following questions: (1) Does a trial court have the authority to impose an exceptional sentence upon remand from the Supreme Court when the case was remanded with an order directing the trial court to "redetermine the petitioner's offender score", and the trial court had originally imposed a standard range sentence? [and] (2) Was imposition of the exceptional sentence barred by the collateral estoppel component of the double jeopardy clause?

The Court of Appeals correctly interpreted the mandate which referred to the opinion and which stated "we remand the case to the trial court to redetermine the petitioner's offender score."

In the "Judgment and Sentence (Felony)", at the time of prior sentencing, the Honorable Stuart C. French, Judge of the Snohomish County Superior Court, entered "Sentencing Data" for the three counts: (1) count 1, offender score of 5, seriousness level VII, range 59 to 72 months, maximum term of 10 years; (2) count 2, offender score of 6, seriousness level X, range 122 to 154 months, maximum term of life; (3) count 3, offender score of 6, seriousness level X, range 122 to 154 months, maximum term of life. Additionally, the trial court stated that "[t]he terms in Counts Number I, II and III are concurrent for a total term of 154 months." The court also allowed credit for 161 days served.

Following our opinion in *Collicott* I, the trial court on September 14, 1989, conducted a remand hearing to redetermine the appellant's offender score and resentence him. At the hearing, the deputy prosecuting attorney advised the sentencing judge that another burglary conviction entered

---

[7]*Collicott* I, at 412.

[8]*Collicott* I, at 419.

on June 9, 1986, should be counted in appellant's offender score. He further advised that the crime was committed prior to September 28, 1985, but that Mr. Collicott had postponed pleading guilty until after the prior sentencing on December 12, 1985.[9]

The deputy prosecuting attorney asserted that the offender score should be 4 for the rape and the kidnapping, and 6 for the burglary, leading to a standard range of 96 to 120 months for the kidnapping and the rape, and 75 to 93 months for the burglary, including enhancement for possession of a deadly weapon on all counts.

Appellant's counsel did not dispute the calculation, but argued against an exceptional sentence since the trial court had stated in the prior sentencing that it would not impose an exceptional sentence. Counsel argued that the State was estopped from urging an exceptional sentence again at the resentencing.

After hearing the arguments of counsel at resentencing, the judge stated:

> I believe this to be a resentencing. I have to redetermine the petitioner's offender score. It's a whole new ball game. I did not find the manifest injustice requiring the imposition of an exceptional sentence at the last sentencing because I felt 154 months was a just sentence. I still feel that way.
> . . . .
> But I'm sentencing him for what he was at the time he pleaded guilty, not today. Even if I were to follow the sentence range as urged by the defendant, I would still find manifest injustice and find substantial and compelling reasons for imposing an exceptional sentence of 154 months, whether it's your recommended sentence range or the states [sic] recommended sentence range, either way.
> For the record, I'm determining the sentence range as computed by the State: 96 to 120 months for kidnapping and rape, 75 to 93 for the burglary.
> I find that with some difficulty, though, to include a burglary. That is why I asked the question whether the burglary was committed before the commission of these offenses. I'm

---

[9]Having achieved a remand for sentencing, Mr. Collicott was faced with the status of his record at the time of the resentencing hearing and had to account for an offense committed prior to the offenses in this case, even though his plea of "guilty" to that charge occurred after the first sentencing in this case.

told, if it were committed after but before today, that would be perhaps a different situation. But I'm not required to make a decision based on those facts.

So I would find the substantial and compelling reasons are that the defendant's conduct did manifest deliberate cruelty to the victim. He threatened her with the lamp. He had a knife. He threatened her. He told her he was going in to get a gun when they finally stopped, as I recall. And I would find that the multiple offenses policy would result in a presumptive sentence clearly too lenient.

So I'll impose the sentence of 154 months on the kidnapping and rape, 93 on the burglary, concurrent.

. . . .
I think there may be another reason for imposing an exceptional sentence. I feel there are two good reasons, but there may be a third. I believe there is a case that says if a defendant invades the privacy of a victim in her bedroom, particularly, that is also grounds for —

[DEFENSE COUNSEL]: Invasion of the zone of privacy.

THE COURT: And that did occur in this case.

. . . .
It was her temporary bed. It is where she was sleeping is where [*sic*] the rape occurred.

In giving reasons for the exceptional sentence, the sentencing judge in the "Judgment and Sentence (Felony) . . . Reasons for Exceptional Sentence" stated that:

1) The defendant's conduct manifested deliberate cruelty towards the victim in the following respects:

A) The defendant assaulted the victim with a lamp to prevent her from contacting police.

B) The defendant repeatedly threatened the victim with a knife.

C) When the defendant left the victim, it was for the stated purpose of obtaining a gun.

These acts constituted gratuitous violence that inflicted physical and mental suffering as an end in itself.

2) Application of the multiple offender policy results in a sentence that is clearly too lenient, in that it disregards several of the defendant's crimes.

By forcing the victim into her bedroom, and raping her there, the defendant invaded her zone of privacy.

Following the resentencing hearing, Appellant Collicott filed an appeal in the Court of Appeals, Division One, which certified the matter to this court.

In its brief, the State requested that this court reconsider its decision in *Collicott* I that the offenses committed by Appellant Collicott were so intimately related that they constituted the "same criminal conduct" as defined by RCW 9.94A.400(1)(a).[10]

Even with elimination of *Collicott* I as precedential authority, this case still requires determination of the following issues:

1. Whether upon remand from an appellate court directing a trial court to redetermine an appellant's offender score, the trial court may impose an exceptional sentence, even though the court chose not to impose an exceptional sentence in the prior proceeding;

2. Whether the doctrine of collateral estoppel prevents the court from making new findings of aggravating factors at a second sentencing hearing upon remand when no such findings were made at the prior sentencing under the same facts;

3. Whether a temporary bedroom in a residential treatment facility may constitute the "zone of privacy" of a rape victim;

4. Whether a conviction entered between the time of original sentencing and the time of resentencing on remand may be counted as a prior conviction at the time of resentencing; and

5. Whether the appellant is required to pay fees and fines when this court's mandate provided that cost bills were waived because they were not timely filed.

The pertinent statutes relating to the offenses charged against Appellant Collicott are:

---

[10]"[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: *Provided,* That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . ." RCW 9.94A.400(1)(a).

*Burglary in the first degree*, RCW 9A.52.020, which reads:

(1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

(2) Burglary in the first degree is a class A felony.

*Rape in the first degree*, RCW 9A.44.040, which reads:

(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:

(a) Uses or threatens to use a deadly weapon or what appears to be a deadly weapon; or

(b) Kidnaps the victim; or

(c) Inflicts serious physical injury; or

(d) Feloniously enters into the building or vehicle where the victim is situated.

(2) Rape in the first degree is a class A felony.

*Kidnapping in the first degree*, RCW 9A.40.020, which reads:

(1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:

(a) To hold him for ransom or reward, or as a shield or hostage; or

(b) To facilitate commission of any felony or flight thereafter; or

(c) To inflict bodily injury on him; or

(d) To inflict extreme mental distress on him or a third person; or

(e) To interfere with the performance of any governmental function.

(2) Kidnapping in the first degree is a class A felony.

Each of the three offenses meets the definition of "violent offense" under RCW 9.94A.030(33)(a), "Any felony defined under any law as a class A felony . . .".

It is necessary to consider the applicable provisions of the Sentencing Reform Act of 1981 to determine this case. RCW 9.94A.120 states in relevant part that:

When a person is convicted of a felony, the court shall impose punishment as provided in this section.

(1) . . . [T]he court shall impose a sentence within the sentence range for the offense.

(2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

(3) Whenever a sentence outside the standard range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. A sentence outside the standard range shall be a determinate sentence.

Additionally, RCW 9.94A.210(4) and (5) provide that:

(4) To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

(5) A review under this section shall be made solely upon the record that was before the sentencing court. Written briefs shall not be required and the review and decision shall be made in an expedited manner according to rules adopted by the supreme court.[11]

We must look to the burglary antimerger statute, RCW 9A.52.050, to determine any limitation on authority of the sentencing judge under the Sentencing Reform Act of 1981, RCW 9.94A, to sentence Appellant Collicott under the facts of this case. We must, in particular, look to the "same criminal conduct" section of the SRA, RCW 9.94A.400(1)(a).

The sentencing judge may calculate a sentence which punishes Appellant Collicott separately for the first degree burglary (count 1), the first degree rape (count 2) and the first degree kidnapping (count 3). Additionally, the sentencing judge may calculate enhanced sentences under the deadly weapon statute, RCW 9.94A.125.

In *State v. Johnson*,[12] we adopted a merger rule prohibiting separate conviction and punishment for criminal offenses used to enhance another crime. In that case, this court held that kidnapping and assault merged into first degree rape since the merged offenses were necessary elements of first degree rape. But in this case, we must

---

[11]RCW 9.94A.210(4), (5).

[12]92 Wn.2d 671, 600 P.2d 1249 (1979).

*additionally* consider the burglary antimerger statute, RCW 9A.52.050, which provides that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." In this case Mr. Collicott was charged with burglary in the first degree (count 1), rape in the first degree (count 2) and kidnapping in the first degree (count 3). This is proper under RCW 9A.52.050. Under that statute it is proper also for Mr. Collicott to be punished for each of the three offenses for which he has been charged. There is no conflict between the burglary antimerger statute and the SRA.

1. *Upon remand, the trial court may impose an exceptional sentence even though one was not imposed at the prior sentencing unless the court is estopped by its prior determination on the same facts in the original sentencing.*

Under ordinary circumstances, the trial court may impose an exceptional sentence if it finds there are substantial and compelling reasons to justify it.[13] An essential issue here is whether the same information used to determine sentence range may also be relied on to justify a departure from that range. The "solution to this potential dilemma is the adoption of the principle that while factors which truly distinguish the crime from others of the same statutory category may justify an exception, those which are inherent in that class of crimes and do not distinguish the defendant's behavior from that inherent in all crimes of that classification may not."[14]

In discussing exceptional sentences, Professor David Boerner in his treatise observes that:

The Minnesota Supreme Court[15] has recognized the need to articulate a basis for distinguishing between the serious-

---

[13]*State v. Handley*, 54 Wn. App. 377, 773 P.2d 879 (1989).

[14]D. Boerner, *Sentencing in Washington*, at 9-13 (1985).

[15]Minnesota cases relating to exceptional sentences under its sentencing reform act may be persuasive in this court. *See State v. Nordby*, 106 Wn.2d 514, 521, 723 P.2d 1117 (1986).

ness of a particular crime and the seriousness inherent in all violations of that defined crime. For example, many violent crimes are "particularly cruel," and their victims are, at least at the time of the crime, "particularly vulnerable." . . . The Court has recognized that "most rape victims are, at the time they are raped, vulnerable in some way" and that "[t]he legislature, to a great extent, has considered the vulnerability of the victims of rapes in determining the seriousness to attach to rape offenses in general and in distinguishing rape offenses by degree." . . .

This rationale has also been used to find that facts which constitute elements of the crime of conviction may not be used to justify a departure. Thus the courts have rejected the use of the fact of injury, the age of the victim, and the fact that a burglary was of an occupied dwelling where those facts were elements of the crime and thus used as a basis for determining the applicable presumptive sentence range.

. . . .

Similarly, in California, where rules guiding that state's presumptive sentencing system were promulgated by the Judicial Council, "[a] fact which is an element of the crime may not be used to impose the upper term." The California Rules, do, however, permit aggravation where "the victim was particularly vulnerable" or where the crime involved "great violence, great bodily harm . . . ." The courts have required "particularly" to be "a special or unusual degree, to an extent greater than in other cases." Where all victims of a specific offense are equally vulnerable, an aggravating factor cannot be found. As the court said in *People v. Bloom*:

All victims of drunk drivers are "vulnerable victims," but it is precisely because they are all vulnerable that Carrie Lee cannot be considered to be vulnerable "in a special or unusual degree, to an extent greater than in other cases."[16]

At the resentencing hearing on September 14, 1989, the trial court imposed an exceptional sentence above the standard range for counts 2 and 3, giving three reasons: "(1) The defendant's conduct manifested deliberate cruelty towards the victim. (2) Application of the multiple offender policy results in a sentence that is clearly too lenient, in that it disregards several of the defendant's crimes. (3) By forcing the victim into her bedroom, and raping her there, the defendant invaded her zone of privacy."

Relying upon the "clearly too lenient" standard, a trial court may impose a sentence above the standard range. In

---

[16](Footnotes omitted.) D. Boerner, at 9.13-9.15.

this case, though, the trial court was under a mandate from this court to redetermine appellant's offender score. Before determining whether the sentence was "clearly too lenient", the trial court would first have to compute a correct presumptive sentence. Since *Collicott* I determined that it did not compute a correct presumptive sentence at the prior sentencing, there was then no logical basis for determining whether the presumptive sentence was "clearly too lenient". Yet, after correctly redetermining the offender score upon remand, the trial court might choose again to consider whether the presumptive sentence is "clearly too lenient".

At the original sentencing on March 7, 1986, the trial judge stated:

> I'm not going to find an exceptional — order an exceptional sentence in this case.
>
> You know, all rapes committed by force or with some type of a weapon are brutal. Just totally repulsive. I've got no sympathy for this defendant whatever. . . . But I'll order the maximum in each count: 72 months on the burglary, 154 months on the rape and 154 months on the kidnapping; as required by law, that these sentences will be served concurrently.

Imposition of an exceptional sentence is directly related to a correct determination of the standard range. That determination can be made only after the offender score is correctly calculated.

2. *The doctrine of collateral estoppel applies to the imposition of an exceptional sentence in this case.*

The doctrine of collateral estoppel applies in criminal cases and bars relitigation of issues actually adjudicated.[17]

"The application of collateral estoppel in a criminal action is a 2-step operation: the first is to determine what issues were raised and resolved by the former judgment, and the second is to determine whether the issues raised and resolved in the former prosecution are identical to those sought to be barred in the subsequent action."[18] In general,

---

[17]*See State v. Peele*, 75 Wn.2d 28, 30, 448 P.2d 923 (1968).

[18]*Peele*, at 30-31.

collateral estoppel "precludes the retrial of issues decided in a prior action."[19]

Imposition of an exceptional sentence in this case is directly related to correct determination of the standard range. Factors considered in computing the standard range cannot be used to justify an exceptional sentence.[20] To determine whether an exceptional sentence should be imposed, the sentencing judge must first correctly determine the appellant's offender score. The next step is to calculate the presumptive sentence. The trial court may consider aggravating or mitigating factors justifying an exceptional sentence and then must determine whether "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2).

At the first sentencing hearing, the sentencing judge specifically declined to impose an exceptional sentence. He could have determined then that an exceptional sentence was justified, but instead concluded that he "was not going to find an exceptional . . . sentence in this case." This followed the State's argument that Appellant Collicott's rape and kidnapping were "deliberately cruel to the victim in that Mr. Collicott victimized her over an exceptionally long period of time. He victimized her in a number of ways." The State argued that "[t]ogether with the deliberate cruelty entailed, these events would justify the Court imposing an exceptional sentence."[21]

After considering these issues at the first sentencing and having determined that no exceptional sentence would be imposed, the trial court is estopped from now imposing an exceptional sentence based on a repeat assertion by the State of deliberate cruelty to the victim.

---

[19]*Seattle First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 228, 588 P.2d 725 (1978); *see also* Restatement of Judgments § 68 (1942).

[20]*State v. Nordby*, 106 Wn.2d 514, 518, 520, 723 P.2d 1117 (1986).

[21]RCW 9.94A.120(2), (3); RCW 9.94A.390.

*3. A temporary bedroom in a residential treatment facility constitutes a "zone of privacy".*

The "zone of privacy" principle has been used in cases involving rape in a victim's backyard;[22] in a victim's bedroom;[23] and slashing a victim's tires while the car was parked at a parking garage near the victim's office and at the victim's apartment, and making multiple threatening telephone calls to the victim.[24]

Here, the victim's temporary bedroom in a residential treatment facility was within her zone of privacy. Occupants of bedrooms in such a facility should have an expectation of privacy. Although the victim here was only temporarily housed in the treatment facility, she had an expectation of safety from harm within her "zone of privacy", albeit a temporary one.

Appellate review of exceptional sentences is governed by standards enunciated in *State v. Fisher:*[25]

> In reviewing an exceptional sentence . . . the appellate court must conduct a 2-part analysis. First, it must decide if the record supports the sentencing judge's reasons for imposing the exceptional sentence. Because this is a factual question, the sentencing judge's reasons must be upheld if they are not clearly erroneous. . . . Under the second part of RCW 9.94A.210(4)(a), the appellate court must determine independently, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range. . . . The reasons must be "substantial and compelling". . . . They must "take into account factors other than those which are necessarily considered in computing the presumptive range for the offense."

In determining whether the trial court's reasons for imposing an exceptional sentence in this case were proper and whether those reasons justify a sentence outside the presumptive range, we must consider the limiting language

---

[22]*State v. Morales*, 324 N.W.2d 374, 376 (Minn. 1982).

[23]*State v. Falling*, 50 Wn. App. 47, 55, 747 P.2d 1119 (1987) .

[24]*State v. Ratliff*, 46 Wn. App. 466, 731 P.2d 1114 (1987).

[25]108 Wn.2d 419, 423, 739 P.2d 683 (1987).

of the mandate issued on remand, the specific directions stated in the opinion and the Rules of Appellate Procedure.

Rule 12.2 of the Rules of Appellate Procedure provides in part that:

> Upon issuance of the mandate of the appellate court as provided in rule 12.5, the action taken or decision made by the appellate court is effective and binding on the parties to the review and governs all subsequent proceedings in the action in any court, unless otherwise directed upon recall of the mandate as provided in rule 12.9, and except as provided in rule 2.5(c)(2).

In this case, the mandate directed the trial court to conduct "further proceedings in accordance with . . . the opinion." *Collicott* I remanded the case "to redetermine the petitioner's offender score." Redetermination of the offender score was the only matter the trial court was directed to consider. That specific mandate governed "all subsequent proceedings in the action".[26]

In *Collicott* I, this court concluded that the trial judge "incorrectly counted each offense to apply to the remaining two in calculating the offender score", and stated that "the three offenses should count as one. With this in mind, we remand the case to the trial court to redetermine the petitioner's offender score."[27] Our decision setting aside *Collicott* I merely changes the mathematical calculation formula and does not expand the scope of matters which could be considered at resentencing.[28]

Having declared in the original sentencing that an exceptional sentence was not warranted, and operating at the resentencing under the mandate to "redetermine the offender score", the trial court could not at resentencing impose an exceptional sentence based on aggravating factors which were considered in the prior sentencing and

---

[26]RAP 12.2.

[27]*State v. Collicott*, 112 Wn.2d 399, 412, 771 P.2d 1137 (1989).

[28]The decision we now reach in this case (*Collicott* II) might well have supported the offender score calculated in the original sentence.

rejected as a basis for an exceptional sentence. There was no foundation for determining whether the sentence was "clearly too lenient" because the offender score was not properly calculated and the standard range sentence was thus erroneous.

*4. The Sentencing Reform Act of 1981 establishes criteria for determining when a prior conviction is used in determining an offender score.*

RCW 9.94A.360(1) provides the basis for determining when a conviction may be included as a prior offense in calculating an offender score:

> (1) A prior conviction is a conviction which exists before the date of sentencing for the offense for which the offender score is being computed. Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed "other current offenses" within the meaning of RCW 9.94A.400.

Appellant Collicott's second degree burglary conviction in Snohomish County on June 9, 1986, was not before the court in *Collicott* I. Appellant entered a plea of "guilty" to that charge on December 12, 1985. The first "Judgment and Sentence" in *Collicott* I was entered on March 11, 1986. The judgment and sentence on the 1986 burglary conviction was entered on June 9, 1986. The resentencing hearing upon remand following *Collicott* I was on September 14, 1989. Mr. Collicott's 1986 guilty plea to the other burglary charge was entered after the date of his first sentence in this case. Under RCW 9.94A.110, at the time of sentencing the "court shall specify the convictions it has found to exist." Further, RCW 9.94A.030(12)(b) defines "criminal history" as the list of a defendant's prior convictions. However, appellant's prior sentencing in this case occurred before his June 1986 burglary conviction, which could not be "found to exist" on March 11, 1986. At both sentencing hearings, in calculating Mr. Collicott's offender score, the sentencing judge considered two prior felony convictions.[29]

---

[29]Second degree burglary, class B, Snohomish County, 1978; and first degree escape, class B, King County, 1983.

A prior conviction is "a conviction which exists before the date of sentencing for the offense for which the offender score is being computed."[30] In *State v. Whitaker*,[31] this court interpreted RCW 9.94A.360(1). There, the defendant was found guilty of negligent homicide in 1981, prior to the Sentencing Reform Act of 1981. The trial court deferred his sentence and placed him on probation. In 1986, the trial court revoked the defendant's probation and set a minimum term for the offense under the Sentencing Reform Act of 1981. In setting the minimum term, the trial court counted a 1986 reckless driving conviction when calculating the standard range under the SRA. In *Whitaker* we held that it was error for the trial court to count the 1986 conviction as a prior offense because the conviction occurred after the 1981 conviction. The term "date of sentencing" was construed to relate back to the 1981 sentencing when the defendant was placed on probation. The court stated that:

> To hold otherwise would be illogical, because the 1981 offense had already been counted as a prior conviction served, for purposes of setting the 1986 minimum term, and then later, the 1986 offense would be counted as a prior conviction, for purposes of fixing the 1981 minimum term. That is, each offense would be treated as a prior conviction to the other.[32]

This case can be distinguished from *Whitaker*. In this case the questioned burglary conviction occurred on a plea of "guilty" after the first sentencing in this case, but prior to the resentencing which is now before this court. We are not here concerned with probation and revocation.

To calculate the offender score under the Sentencing Reform Act of 1981, we refer to the applicable sections of RCW 9.94A.360 which read:

> (10) If the present conviction is for Murder 1 or 2, Assault 1, Kidnaping 1, Homicide by Abuse, or Rape 1, count three points for prior adult and juvenile convictions for crimes in

---

[30]RCW 9.94A.360(1).

[31]112 Wn.2d 341, 771 P.2d 332 (1989).

[32]*Whitaker*, at 346.

these categories, two points for each prior adult and juvenile violent conviction (not already counted), one point for each prior adult nonviolent felony conviction, and ½ point for each prior juvenile nonviolent felony conviction.

(11) If the present conviction is for Burglary 1, count prior convictions as in subsection (9) of this section [two points for each prior adult and juvenile violent felony conviction and one point for each prior adult nonviolent felony conviction]; however count two points for each prior adult Burglary 2 . . . conviction, and one point for each prior juvenile Burglary 2 . . . conviction.

RCW 9.94A.370(2) states:

In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for . . ..

In *State v. Fisher*,[33] this court quoted RCW 9.94A.210(4) for the standard governing appellate review of a sentence outside the presumptive range:

To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.[34]

Here, the sentencing judge's articulated reasons for imposing an exceptional sentence at the time of resentencing conflicted with both the Sentencing Reform Act of 1981 and this court's holding in *Fisher*. The sentencing judge included a statement that "[a]pplication of the multiple

---

[33]108 Wn.2d 419, 739 P.2d 683 (1987).

[34]*Fisher*, at 422 (quoting RCW 9.94A.210(4)).

offender policy results in a sentence that is clearly too lenient, in that it disregards several of the defendant's crimes." This is not correct. Calculation of an offender score under the SRA already takes into consideration prior convictions.[35]

The sentencing judge filed the following statement as part of the sentencing data, which was based upon an *erroneous offender score*, resulting in an incorrect sentence: count 1, offender score of 6, range of 75 to 93 months, maximum term of 10 years; count 2, offender score of 4, range of 96 to 120 months, maximum term of life; (and) count 3, offender score of 4, range of 96 to 120 months, maximum of life.

Under the SRA, RCW 9.94A.320, the *correct offender scores* for Mr. Collicott's three offenses in this case are 9 for the burglary (count 1), 7 for the rape (count 2) and 7 for the kidnapping (count 3).[36] Under the SRA, the *seriousness level* for the burglary is VII (count 1), for the rape is X (count 2) and for the kidnapping is X (count 3).

Contrary to *Collicott* I, we now conclude that the burglary, rape and kidnapping did not arise out of the "same criminal conduct". Applying the offender score,[37] seriousness level,[38] and weapons enhancement[39] to Mr. Collicott, we determine new presumptive or standard sentencing ranges[40] for each offense, utilizing the sentencing grid,[41] which are now calculated according to the following chart:

---

[35]RCW 9.94A.360.

[36]*See* Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* (1988).

[37]RCW 9.94A.310; RCW 9.94A.360.

[38]RCW 9.94A.320.

[39]RCW 9.94A.125.

[40]RCW 9.94A.370.

[41]RCW 9.94A.310.

|  | Standard Range | Deadly Weapon | Total Range |
|---|---|---|---|
| Burglary, first degree<br>Seriousness level VII<br>Offender Score 9 | 87-116 months | 18 months | 105-134 months |
| Rape, first degree<br>Seriousness level X<br>Offender Score 7 | 108-144 months | 24 months | 132-168 months |
| Kidnapping, first degree<br>Seriousness level X<br>Offender Score 7 | 108-144 months | 24 months | 132-168 months |

5. *The mandate specifically states that cost bills were waived because they were not timely filed.*

No costs will be allowed.

■ In setting aside our decision in *Collicott* I,[42] we reconsider our "element sharing" analysis under the facts of this case and instead adhere to the "furtherance" test of *State v. Dunaway*,[43] which would determine the intent of the accused in each successive offense and whether one offense was in furtherance of another.[44] We do so because we are now convinced that double punishment is avoided under the *Dunaway* approach and the merger doctrine. The lesser offense merges into the greater offense when one offense raises the degree of another offense. *Dunaway* provides another protection: if the defendant's criminal purpose did not change from one offense to another, then the offenses

---

[42]112 Wn.2d 399, 771 P.2d 1137 (1989).

[43]109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987).

[44]*See* Note, *The "Same Criminal Conduct" Exception of the Washington Sentencing Reform Act: Making the Punishment Fit the Crimes* — State v. Collicott, *112 Wash.2d 399, 772 P.2d 1137 (1989),* 65 Wash. L. Rev. 397 (1990).

encompass the same criminal conduct and the sentences cannot be enhanced by an offender score.[45]

We set aside our prior plurality decision in *Collicott* I and again remand this case to the trial court for imposition of the correct offender score and resentencing under the Sentencing Reform Act of 1981 consistent with the correct offender score, our decision in *Dunaway* and the burglary antimerger statute, RCW 9A.52.050.[46]

DORE, C.J., and UTTER and DOLLIVER, JJ., concur.

DURHAM, J. (concurring) — **[1]** The majority properly rejects the plurality opinion issued in *State v. Collicott*, 112 Wn.2d 399, 771 P.2d 1137 (1989) (*Collicott* I), and returns to the correct analysis of "same criminal conduct" under RCW 9.94A.400. I have previously proposed what I believe to be the appropriate reasoning:

> In *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987), we adopted the following analysis for determining when crimes "encompass the same criminal conduct" under RCW 9.94A.400(1)(a):
>> [T]rial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.
> *Dunaway*, at 215. We also held that crimes involving multiple victims can never encompass the same criminal conduct. *Dunaway*, at 215.

*Collicott* I, at 412-13 (Durham, J., dissenting). The application of the *Dunaway* analysis to the facts of this case can also be found in my dissent to *Collicott* I, at 415-17.

---

[45]65 Wash. L. Rev. at 410-12.

[46]Ironically, the trial court might well determine a standard range sentence of 154 months, which was the sentence imposed originally.

My disagreement with the majority opinion here is that it goes beyond what is necessary to resolve this case. I refer specifically to the discussions of collateral estoppel, the "clearly too lenient" standard, and the "zone of privacy" factor.

Accordingly, I concur.

BRACHTENBACH, ANDERSEN, and GUY, JJ., and CALLOW, J. Pro Tem., concur with DURHAM, J.

After modification, further reconsideration denied June 4, 1992.