216 P.3d 479 (2009)
STATE of Washington, Respondent,
v.
Joseph George COLEMAN, Appellant.
No. 36757-2-II.
Court of Appeals of Washington, Division 2.
September 29, 2009.
*480 Karen Anne Watson, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
HUNT, J.
¶ 1 Joseph George Coleman appeals his conviction for first degree burglary and his exceptional sentence based on three aggravating sentencing factors: sexual motivation, invasion of privacy, and presence of the victim during the commission of the crime. He argues that we should vacate his exceptional sentence because (1) the trial court improperly required the jury to continue deliberating after it returned a non-unanimous "no" answer to the special verdict question of whether he acted with sexual motivation in committing the burglary; (2) invasion of privacy inheres in first degree burglary and, therefore, cannot be used as an aggravating factor for that offense; (3) the trial court erroneously used the presence of the victim's mother during the burglary as an aggravating factor because the information alleged only the victim's presence; and (4) the *481 trial court improperly relied on its own findings of fact, which mirrored the jury's special verdicts, when it imposed the exceptional sentence, thus violating Coleman's right to notice and his rights under Blakely.[1] Coleman also argues that we should reverse his conviction because the prosecutor committed misconduct by misstating the beyond-a-reasonable-doubt standard during closing argument. We affirm Coleman's conviction, vacate his sentence, and remand for resentencing.

FACTS

I. Burglary
¶ 2 On June 5, 2006, around 4 am, 16-year-old EM was sleeping in her bed, located beneath her bedroom window. She awoke feeling something touching her face, opened her eyes, looked around her bedroom, saw nothing in the room, heard heavy breathing, and "just completely froze." When she again felt something touch her face and her ear, she turned around "as fast as [she] could" toward her window, saw Joseph Coleman jump back as he was leaning in through her window, and yelled at him.
¶ 3 Coleman apologized and claimed to be at the wrong window, stating that he was looking for a "Tina Johnson." EM told Coleman there was no one in the neighborhood by that name. Coleman again apologized. EM told Coleman he needed to leave. But instead of leaving, Coleman asked EM how old she was. EM told him it did not matter and that he just "needed to leave." Coleman "then he came forward, towards [EM], and he said, well, you're not going to tell anyone, are you?" Report of Proceedings (RP) (Jul. 9, 2007) at 42. EM told him she would not tell anyone if he left. Coleman then closed EM's window and "just walked away."
¶ 4 EM went into her mother's bedroom, woke her mother, and told her what had just happened. EM's mother called the police.
¶ 5 Within the next week, EM saw Coleman in her neighborhood, recognized him, went home, and told her mother. EM and her mother again called the police.

II. Investigation and Arrest
¶ 6 In August, police officers showed EM a photo montage, in which EM identified the photograph of Coleman. A couple days later, officers contacted Coleman at his home. Detective Brian Lund informed Coleman that they were investigating a burglary in which Coleman was a suspect and asked if there was someplace they could talk. Coleman invited the officers inside his home.
¶ 7 Lund advised Coleman of his Miranda[2] rights. Coleman asked Lund if Lund thought he (Coleman) needed a lawyer. Lund replied that he could not answer that question but that talking to him (Lund) was voluntary. Coleman then signed a form stating that he was willing to talk to the detectives.
¶ 8 Initially, Coleman denied having reached through EM's window and touching her, even when confronted with specifics. But when Lund informed Coleman that EM had identified him and that he (Coleman) was under arrest for burglary, Coleman began to cry and apologize, "saying that he had done it and that he was sorry, and . . . he did not hurt [EM] and was not going to hurt her." RP (Jul. 10, 2007) at 20.
¶ 9 The police placed Coleman in handcuffs and transported him to the sheriff's department headquarters. At headquarters, Lund asked Coleman whether he was willing to give a taped statement about the incident; Coleman replied that he would. During his taped statement, Coleman described having seen EM through the window and touching her. He also admitted to having asked EM how old she was, telling EM that he was looking for someone named Tina Johnson, and apologizing to EM.

*482 III. Procedure
¶ 10 The State charged Coleman by amended information[3] with first degree burglary. The State also alleged three aggravating circumstances for sentencing purposes: (1) the offense was sexually motivated, (2) the offense involved an invasion of privacy, and (3) the offense was a burglary and the burglary victim[4] was present in the building or residence at the time of the offense.

A. Jury Trial
¶ 11 During the two-day jury trial, EM, her mother, and four police officers testified for the State. The State also played Coleman's taped confession for the jury. Coleman neither testified nor presented witnesses.
¶ 12 The trial court instructed the jury on first degree burglary, the lesser included offense of criminal trespass, and the aggravating factors. For the burglary and trespass general verdict forms, the trial court instructed the jury that (1) to enter a guilty verdict, it needed to be convinced beyond a reasonable doubt; (2) it needed to be unanimous to enter any verdict; and (3) if it was unable to reach a unanimous verdict, it should "not fill in the blank provided in Verdict Form A." Clerk's Papers (CP) at 90-91.
¶ 13 For the aggravating factors special verdict form, the trial court instructed the jury:
If you find the defendant guilty of the crime of Burglary in the First Degree, you will then use the special verdict form and fill in the blanks with the answer "yes" or "no" according to the decision you reach.
Answer each question separately. Your answer on one question should not impact your answer on the other questions.
In order to answer any of the questions on the special verdict form "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer for that specific question. If you have a reasonable doubt as to the question, you must answer "no."
CP at 92. The trial court did not, however, instruct the jury to leave the special verdict form blank if it was unable to reach a unanimous verdict on an aggravating factor.

B. Verdicts
¶ 14 After deliberating for two hours, the jury found Coleman guilty of first degree burglary. On the special verdict form, the jury initially answered (1) "No" to the question of whether Coleman committed the offense with sexual motivation, (2) "Yes" to the question of whether the offense involved invasion of the victim's privacy, and (3) "Yes" to the question of whether the "victim"[5] was present in the residence when the crime was committed. The trial court then polled the jury, by a show of hands, to see if each juror agreed to the verdicts returned. Only two jurors raised their hands when the trial court asked the jurors if their personal vote on the sexual motivation question was "No."
¶ 15 The trial court sent the jury back to the jury room. The trial court then told counsel,
It looks more like they were hung on [the sexual motivation question], than there was a unanimous response to that.
. . . .
I'm re-reading the instructions, and I don't think that we told them, clearly, that they needed to be unanimous about the special verdicts.
. . . .
So they answered "no" on other verdicts we say they unanimously need to say "no," and you leave it blank if you can't decide. We didn't give them that option, so . . . I think it's a little unclear. I mean, I think, it's exactly what we told them to do. If they're unanimous in terms of "yes," they put "yes." And if they're not, they have a reasonable doubt, they answered "no." It *483 doesn't say anything about you being unanimous.
RP (Jul. 10, 2007, verdict) at 122-23.
¶ 16 The State responded:
I think it's clear that they  at the very best, they've hung. I guess my problem is, I don't think it's  I don't think accepting this verdict in this is proper, given what we know are the long-term implications of it, of a special verdict, and jeopardy attaching to a special verdict when the answer is, no. If it was a unanimous, "no," then obviously, it has very specific implications; and when it's "yes," it's different; and if it's hung, it's different.
RP (Jul. 10, 2007, verdict) at 124. The State urged the trial court to ask the presiding juror whether the jury was unanimous with respect to the "no" special verdict and whether the jury might be able to reach a unanimous verdict after further deliberations. If the jury was not unanimous and could not reach a unanimous verdict, then the State would ask the court to declare the jury hung.
¶ 17 Defense counsel objected to the jury's continuing to deliberate:
Your Honor, this matter went to the jury. The jury didn't have any questions. The jury filled out the special verdict form the way that they were instructed. They've returned a verdict, and it said, no, we don't find, you know, sexual motivation. And I think that even if there was a split amongst the jurors, as it appears to be from the show of hands, the question on the agreed upon jury instructions indicated that if you can't be unanimous, then you must say, no. That's obviously what happened.
Now, Mr. Coleman's already run the gauntlet, and the case and trial is over. It doesn't say that you have to be unanimous for the "no."
RP (Jul. 10, 2007, verdict) at 125.
¶ 18 The trial court decided that it would poll the jury once more about its special verdict on the question of whether Coleman had acted with sexual motivation and then ask the jury whether, given more time, it might reach a unanimous verdict. The trial court called the jury back into the courtroom and polled the jurors again. This time four jurors raised their hands in response to whether "No" was their personal verdict on the sexual motivation question. The trial court engaged in the following colloquy with the presiding juror, in the presence of the other jurors:
THE COURT: So I'm going to ask the question, and I only want you to answer "yes" or "no." Not another word. Okay?
So the question is: . . . Is there a reasonable probability of the jury reaching an agreement, a unanimous agreement, within a reasonable time, as to the special verdict form question regarding sexual motivation: "Yes" or "no" 
THE JUROR: I almost can't answer that "yes" or "no." We did agree 
THE COURT: No 
THE JUROR: Yes, I guess 
THE COURT: Let me just carefully word the question again. Is there a reasonable probability of the jury reaching a unanimous agreement within a reasonable time, . . . as to the special verdict form regarding sexual motivation?
THE JUROR: Yes.
THE COURT: Thank you. I'm now going to ask you to go back in the jury deliberation room, all of you.
RP (Jul. 10, 2007, verdict) at 130-31. The trial court gave the jury no further instruction and sent them back to the jury room.
¶ 19 After five to ten minutes of further deliberation, the jury returned and answered "Yes" to the special verdict form question about whether Coleman committed the burglary with sexual motivation. The trial court then asked the jurors to raise their hands if their personal votes were "Yes." This time, all 12 jurors raised their hands.

C. Sentencing
¶ 20 At sentencing, Coleman argued that the trial court should impose a standard range sentence, rather than an aggravating-factor-enhanced exceptional sentence, because (1) under State v. Goldberg, 149 Wash.2d 888, 72 P.3d 1083 (2003), the trial *484 court should have accepted the jury's non-unanimous "no" verdict on the "sexual motivation" aggravating factor; and (2) the "invasion of privacy" aggravating factor inhered in and was subsumed by his first degree burglary conviction.[6] The State requested an exceptional sentence, asserting that (1) Goldberg did not apply; and (2) both the "invasion of privacy" and "presence of the victim" aggravating factors were proper and were not "subsumed in the crime in this case" because there were two victims  EM and her mother. Coleman responded that the trial court could not use the presence of EM's mother in the home or the invasion of EM's mother's privacy as aggravating factors because the State did not include the mother in the charging language of the information.
¶ 21 Rejecting Coleman's arguments, the trial court imposed an exceptional sentence based on all three aggravating factors. The trial court also noted that it would impose an exceptional sentence even if only one of the three factors the jury found were present. And, in response to Coleman's challenge to the aggravating factors, the trial court entered its own findings and reasons for the three aggravating factors, including invasion of privacy and that there were two victims, EM and her mother. Based on the jury's special verdict finding that Coleman committed the burglary with sexual motivation, the trial court sentenced Coleman to a minimum prison term of 20 months with a maximum sentence of life imprisonment under RCW 9.94A.712,[7] and to community custody for life.
¶ 22 Coleman appeals.

ANALYSIS

I. Exceptional Sentence: Aggravating Factors
¶ 23 Coleman argues that the trial court erred by imposing an exceptional sentence based on (1) the jury's "sexual motivation" special verdict after returning to the jury room, even though they had previously answered "no" to the question of whether Coleman had committed the burglary with sexual motivation; (2) the jury's "invasion of privacy" special verdict finding; and (3) the trial court's own aggravating factors findings of fact,[8] including that the victim's mother was present in the residence during the burglary. We address each argument in turn.

A. Sexual Motivation
¶ 24 Coleman first argues that (1) the trial court lacked authority to refuse the jury's "no" answer on the special verdict question of whether he committed the burglary with sexual motivation, and (2) it was error for the trial court to order the jury to continue deliberating on this question. More specifically, Coleman argues that, although the trial court's jury poll indicated that their "no" special verdict was not unanimous, requiring the jury to continue deliberations violated the rule set forth in Goldberg, 149 Wash.2d 888, 72 P.3d 1083.[9] We agree.
¶ 25 In Goldberg, as an aggravating factor to first degree murder, the State alleged that Goldberg had killed the victim "because of his role as a witness in the dissolution proceeding." *485 149 Wash.2d at 891, 72 P.3d 1083. The trial court instructed the jury:
In order to answer the special verdict form "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question, you must answer "no."
Id. at 893, 72 P.3d 1083 (emphasis in original).
¶ 26 After deliberating, the jury answered "no" on the special verdict form. Id. at 891, 72 P.3d 1083. The trial court polled the jury and determined that the jurors had not been unanimous in their "no" answer. Id. After discussion with counsel, the trial court required the jurors to resume deliberations on the special verdict. Id. After three additional hours of deliberations, the jury unanimously found that the State had proved the aggravating factor beyond a reasonable doubt. Id. at 891-92, 72 P.3d 1083.
¶ 27 The Washington Supreme Court held that the trial court erred when it treated the jury's non-unanimous "no" as if the jury were deadlocked, and ordered the jury to continue deliberations, because the jury had performed as instructed. Id. at 894, 72 P.3d 1083. The court explained that the trial court did not have authority to act as it did because its instruction required the jury to be unanimous only to answer the special verdict question "Yes"; but no instruction required the jury to be unanimous to answer the special verdict question "No." Id. at 893, 72 P.3d 1083.
¶ 28 The State argues that Goldberg is not dispositive because the Supreme Court decided it before the legislature enacted RCW 9.94A.537(3), which requires a jury to be unanimous to enter a verdict on an aggravating circumstance. We disagree. RCW 9.94A.537(3) provides, in pertinent part: "The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory." Even assuming, without deciding, that RCW 9.94A.537(3) requires jury unanimity to return a "no" special verdict on an aggravating factor, as well as to return a "yes" special verdict, here, as in Goldberg, the trial court's instructions did not require the jury to be unanimous to answer "no." Because the State did not object to the trial court's instruction, it became the law of the case. State v. Hickman, 135 Wash.2d 97, 101-02, 954 P.2d 900 (1998) (jury instructions to which neither party objects become the law of the case, even if incorrect). Thus, RCW 9.94A.537(3) does not change our analysis.
¶ 29 We find Goldberg dispositive. The facts here are virtually identical to those in Goldberg, including the wording of the trial court's instruction to the jury. Because this instruction did not require the jury to be unanimous to answer "no" to the special verdict form questions, the trial court erred by treating the jury's "no" answer as if they had deadlocked and in requiring the jury to continue deliberations. We, therefore, vacate the "sexual motivation" aggravating factor.[10]

B. Invasion of Privacy
¶ 30 Coleman next argues that invasion of privacy inheres in the crime of first degree burglary and, therefore, cannot be used as an aggravating factor to support an exceptional sentence.[11] Coleman is correct that earlier case law precluded the trial court's using invasion of privacy to support an exceptional sentence for first degree burglary because invasion of privacy is inherent in that crime. See State v. Lough, 70 Wash. App. 302, 336, 853 P.2d 920 (1993), aff'd, 125 *486 Wash.2d 847, 889 P.2d 487 (1995); State v. Post, 59 Wash.App. 389, 400-01, 797 P.2d 1160 (1990), aff'd, 118 Wash.2d 596, 826 P.2d 172 (1992).
¶ 31 But former RCW 9A.52.020 (1989), which was still in effect when Lough was decided in 1993, required the defendant to "enter[] or remain[] unlawfully in a dwelling" to be guilty of first degree burglary. (Emphasis added.) Under the current statute, to be guilty of first degree burglary, the defendant must "enter[] or remain[] unlawfully in a building." RCW 9A.52.020 (emphasis added). Because Coleman's entry into EM's bedroom was a greater invasion of her privacy than if he had entered and assaulted her in a building that was not her residence, we reject Lough's rule that invasion of privacy inheres in first degree burglary as charged here. Therefore, we affirm the "invasion of privacy" aggravating factor.

C. Presence of "Victim" in the Home
¶ 32 Coleman next argues that the trial court could not use the presence of EM's mother in the home during the burglary because in the amended information the State alleged only EM's presence as an aggravating factor. It is not clear to us whether the jury's special verdict remains intact without considering EM's mother's presence.[12] Nevertheless, assuming, without deciding, that the trial court erroneously enhanced Coleman's sentence based on the presence of the "victim," we hold that the error, if any, is harmless. RCW 9.94A.535(3) authorizes both the "invasion of the victim's privacy" and the "presence of the victim of the burglary" as aggravating factors; and the trial court may impose the same exceptional sentence whether one or both factors remain.[13] Thus, we need not resolve whether the jury's verdict on this "presence of the victim" factor remains intact.

D. Resentencing
¶ 33 Where, as here, a trial court specifically states that any one of multiple aggravating factors alone would provide a sufficient basis for the exceptional sentence,[14] and we uphold at least one of these factors, the trial court's error in considering other improper aggravating factors is harmless; and we generally will not remand for resentencing. State v. Harding, 62 Wash.App. 245, 250, 813 P.2d 1259, review denied, 118 *487 Wash.2d 1003, 822 P.2d 287 (1991). Here, as we discuss above, the "violation of privacy" aggravating factor remains intact to support an exceptional sentence.[15]
¶ 34 Nevertheless, we must remand for resentencing because (1) based on the "sexual motivation" aggravating factor, the trial court imposed an exceptional sentence setting minimum and maximum terms; (2) we are vacating this "sexual motivation" aggravating factor because the jury initially answered "no" to the special verdict question about existence of this factor; and (3) on remand, the trial court can neither sustain nor re-impose such indeterminate sentence based on the factor we affirm, "invasion of privacy," which does not involve sexual motivation and its corresponding minimum and maximum indeterminate sentence terms.[16]
¶ 35 We affirm Coleman's conviction, vacate his sentence, and remand for resentencing using as the aggravating factor that Coleman invaded the EM's privacy when he committed the burglary.[17]

II. Prosecutorial Misconduct
¶ 36 Coleman further argues that we should reverse his burglary conviction because (1) the prosecutor committed misconduct when, in closing argument, he misstated the reasonable doubt standard;[18] and (2) his counsel was ineffective in failing to object to the prosecutor's closing remarks. These arguments fail.

*488 A. Standard of Review
¶ 37 Generally, a defendant must object to an alleged error at trial when it can be corrected; otherwise, he fails to preserve the error for appeal. State v. Classen, 143 Wash.App. 45, 64, 176 P.3d 582 (citing State v. Fagalde, 85 Wash.2d 730, 731, 539 P.2d 86 (1975)), review denied, 164 Wash.2d 1016, 195 P.3d 88 (2008). Thus, where the defendant does not object at trial, he must prove that the prosecutor's comments were so flagrant and ill-intentioned that a curative instruction would have been ineffective to cure the resulting prejudice. Classen, 143 Wash.App. at 64, 176 P.3d 582; State v. Barajas, 143 Wash. App. 24, 38, 177 P.3d 106 (2007), review denied, 164 Wash.2d 1022, 195 P.3d 957 (2008). Coleman's counsel did not object at trial to the prosecutor's comments that he now challenges for the first time on appeal.
¶ 38 "In order to establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial." State v. Magers, 164 Wash.2d 174, 191, 189 P.3d 126 (2008) (internal quotation marks omitted) (quoting State v. Hughes, 118 Wash.App. 713, 727, 77 P.3d 681 (2003), review denied, 151 Wash.2d 1039, 95 P.3d 758 (2004)). "Prejudice occurs where there is a `substantial likelihood that the misconduct affected the jury's verdict.'" In re Detention of Sease, 149 Wash.App. 66, 81, 201 P.3d 1078 (2009) (quoting State v. Thomas, 142 Wash.App. 589, 593, 174 P.3d 1264, review denied, 164 Wash.2d 1026, 195 P.3d 958 (2008)).

B. No Showing of Prejudice
¶ 39 We do not reach the issue of whether the prosecutor's remarks were improper for two reasons. First, Coleman failed to object at trial and he does not show that the prosecutor's remarks were so "flagrant and ill intentioned" that a curative instruction would have been ineffective to cure the allegedly resulting prejudice. Classen, 143 Wash.App. at 64-65, 176 P.3d 582.
¶ 40 Second, and more importantly, Coleman has not alleged and cannot show prejudice "in the context of the entire record and the circumstances at trial," which overwhelmingly show his guilt. Magers, 164 Wash.2d at 191, 189 P.3d 126. EM testified about waking up to Coleman's reaching in through her window and touching her face. In court EM identified Coleman as the person who had reached into her bedroom and touched her. The arresting officers testified about EM's picking Coleman from a photo montage and his confessing to having reached into EM's bedroom and touching her. The jury also heard Coleman's taped confession, in which he admitted to reaching into EM's window and touching her face.
¶ 41 Under these circumstances, there is not "a `substantial likelihood that the misconduct affected the jury's verdict.'" Sease, 149 Wash.App. at 81, 201 P.3d 1078 (quoting Thomas, 142 Wash.App. at 593, 174 P.3d 1264).[19] We hold, therefore, that the prosecutor's remarks, even if improper, were not prejudicial.[20] And Coleman's failure to establish prejudice automatically defeats his ineffective assistance of counsel argument because prejudice is one part of a two-prong test that he must meet. Magers, 164 Wash.2d at 191, 189 P.3d 126.
¶ 42 We affirm Coleman's conviction, vacate his sentence, and remand for resentencing using as the sole aggravating factor that the victim was present at the time Coleman committed the burglary.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that any fact, other than a prior conviction, used to increase a defendant's sentence beyond the standard range must be submitted to a jury and proven beyond a reasonable doubt).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The first information charged Coleman with first degree burglary with sexual motivation.
[4] The information does not specify who "the victim" is for purposes of the burglary or the aggravating factors, although it specifically names EM as the assault victim.
[5] The special verdict form does not specifically state that "the victim" is EM.
[6] Coleman argued during the trial that the presence of the victim also inhered in the first degree burglary because of the underlying assault; but he did not renew that argument at sentencing. Nor does he raise this issue on appeal.
[7] Under RCW 9.94A.712, the trial court may impose an indeterminate sentence for a defendant convicted of first degree burglary with a finding of sexual motivation. The minimum term of such indeterminate sentence "shall be. . . within the standard sentence range for the offense" unless other aggravating factors apply, in which case the minimum sentence may be outside the standard range. RCW 9.94A.712(3)(c)(i). The maximum sentence "shall consist of the statutory maximum sentence for the offense." RCW 9.94A.712(3)(b). Based on the trial court's having found that Coleman's offender score was zero, his standard sentencing range for first degree burglary was 15 to 20 months confinement. RCW 9.94A.510, .515. First degree burglary is a class A felony, RCW 9A.52.020(2), for which the statutory maximum is life imprisonment, RCW 9A.20.021.
[8] We note that Coleman also challenges the trial court's "mirroring" the jury's special verdict findings by entering its own findings on the aggravating factors. See n. 15, infra.
[9] The State counters that the trial court properly instructed the jury to continue deliberations because the jury had not reached a unanimous verdict on the sexual motivation aggravating factor as RCW 9.94A.537(3) requires. We disagree.
[10] Because we hold that the trial court erred in failing to accept the jury's initial "no" special verdict answer to the sexual motivation question, we do not reach Coleman's alternative argument that the court's manner of instructing the jury to continue deliberations was improperly coercive and violated his right to a fair trial. See also n. 18, infra.
[11] The State argues that in State v. Collicott, 118 Wash.2d 649, 827 P.2d 263 (1992), the Washington Supreme Court rejected the argument that Coleman makes here. But Collicott addressed whether the defendant committed a rape, not a burglary, within the victim's "zone of privacy," even though he was also convicted of burglary. 118 Wash.2d at 655, 662, 827 P.2d 263. Thus, Collicott, which also addressed former RCW 9A.52.020, does not resolve the issue before us.
[12] Coleman argued below that the trial court could not use EM's presence to enhance his sentence because her presence, as the victim of the assault inside the residence, would be subsumed by a guilty verdict on the burglary charge. At sentencing, in response to Coleman's argument, the State asserted that the "victim's presence" did not inhere in the verdict because there were two victims  EM and her mother. Coleman responded that he did not have the amended information with him, but that he thought the information listed only EM as the victim and was, thus, without notice that the State intended to use the mother's presence to enhance Coleman's sentence.

Neither the information nor the special verdict form identifies "the victim." The amended information does not mention EM's mother or include any facts indicating that there were other burglary victims other than EM, whom the amended information identifies as the victim of the sexual assault. We further note that the amended information refers to the singular "victim" rather than plural "victims."
Without expressly ruling on whether EM's presence inhered in the burglary guilty verdict or whether Coleman had notice that the State intended to use EM's mother's presence to enhance his sentence, the trial court found the "presence of the victim" aggravating factor as follows:
I'm not sure whether Ms. Mitchell was listed as a victim either. I don't know the charging language. I didn't look at that, but I will find that clearly [EM] was present, and Ms. Mitchell was present in the home at the same time, so I'm going to find each of those aggravating factors.
RP (Sept. 6, 2007) at 12. In our view, however, the trial court impliedly ruled that EM's presence inhered in the verdict: If the trial court had ruled that EM's presence did not inhere in the verdict, the trial court would not have needed to discuss EM's mother's presence during the burglary.
But because we must remand for resentencing without the RCW 9.94A.712 indeterminate sentence based on the "sexual motivation" aggravating factor, and we affirm the "invasion of privacy" aggravating factor, we leave it to the parties and to the trial court on remand to determine whether to clarify the record on this point.
[13] See State v. Harding, 62 Wash.App. 245, 250, 813 P.2d 1259, review denied, 118 Wash.2d 1003, 822 P.2d 287 (1991).
[14] See Finding of Fact IX, CP at 165.
[15] Because we vacate the sexual motivation aggravating factor but affirm the "invasion of privacy" aggravating factor, found by the jury, which will support an exceptional sentence on remand, we do not address Coleman's general argument that the trial court erred by relying on its own findings of aggravating factors.
[16] Only the jury's finding of sexual motivation, after the trial court sent them back to deliberate further, ostensibly supported the trial court's indeterminate exceptional sentence under RCW 9.94A.712. Although the jury's finding that Coleman invaded the victim's privacy will support an exceptional sentence under RCW 9.94A.535, such exceptional sentence must be determinate. Therefore, we must vacate the sexual-motivation-based indeterminate sentence and remand for resentencing.
[17] Because the jury originally answered "no" to the special verdict question about the "sexual motivation" aggravating factor and we hold that the trial court erred in sending the jury back for further deliberation on this factor, on remand for resentencing the trial court may not empanel a new jury to consider this "sexual motivation" aggravating factor as the State requests. Br. of Resp't at 18. See State v. Wright, 165 Wash.2d 783, 792, 203 P.3d 1027 (2009) ("An acquittal is an absolute bar to retrial, regardless of how erroneous."). In so noting, we distinguish State v. Benn, 161 Wash.2d 256, 264, 165 P.3d 1232 (2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2871, 171 L.Ed.2d 813 (2008), in which our Supreme Court held that where the jury left the special verdict form blank, "jury's failure to find the existence of an aggravating factor does not constitute an `acquittal' of that factor for double jeopardy purposes."

Here, the jury returned a special verdict that Coleman did not commit the burglary with sexual motivation; this special verdict differs from the Benn jury's leaving the special verdict form blank. Here, the jury's special verdict "no" answer signified that the State had failed to prove the "sexual motivation" aggravating factor to the jury beyond a reasonable doubt.
[18] In support, Coleman cites the following excerpt:

When you're confident of that, you know what happened, you are convinced beyond a reasonable doubt. I posit to you, this is not a standard that you're unfamiliar with. You actually use this standard a lot.
If you parked up in that apartment across the street when you came here today, and you came down, and you came to the crosswalk and the light was  there's a walk sign and a don't walk sign. And you looked at that light and you waited for it to become "walk," said, "Okay. Let's walk across the street." You're satisfied beyond a reasonable doubt that it's safe to walk across the street.
You've looked left. You've looked right. Is it guaranteed that you won't get hit? Is it guaranteed that the guy that actually stopped and looked at you and waved isn't going to be the biggest jerk in the world and run you down; isn't going to have a heart attack and have his foot fall off the brake and roll into you; isn't going to get hit from behind and knock  his car get knocked into yours?
No. Those are all possibilities, but is it reasonable to believe that now you can cross the street? Are you satisfied beyond a reasonable doubt? Yes. And you live with that standard in every courtroom in America, and we're not paralyzed by it, the way you're not paralyzed by your decision with whether or not to cross the street. You have to make a decision to do that. We don't have  we never will in any case have every bit of information we would like to have.
RP (Jul. 10, 2007) at 47-48.
[19] Citing State v. Easter, 130 Wash.2d 228, 242, 922 P.2d 1285 (1996), Coleman argues that this error is constitutional and, in order to find this error harmless, we must be convinced beyond a reasonable doubt that a reasonable jury would reach the same result absent the error. Considering the evidence discussed above, including Coleman's taped confession, we are convinced beyond a reasonable doubt that a reasonable jury would reach the same conclusion even without the prosecutor's closing argument.
[20] Furthermore, Coleman does not argue that the trial court's "reasonable doubt" instruction was defective. We presume that jurors follow the trial court's instructions. State v. Kirkman, 159 Wash.2d 918, 937, 155 P.3d 125 (2007).