[No. 20331–2–I.   Division One.   September 6, 1988.]

LEN ESERHUT, *Appellant*, v. STEVE HEISTER,
ET AL, *Respondents*.

*Richard J. Wotipka* and *Broihier & Wotipka,* for appellant.

*Norman W. Cohen,* for respondents.

WEBSTER, J.—Leonard Eserhut appeals the trial court's decision that his former coemployees, Steve Heister, Tom Weist and Gary Venn (hereinafter coemployees), are not liable for the tort of intentional interference with a business relationship. The coemployees cross–appeal, contending that the trial court should have dismissed the action based on the exclusivity doctrine of the Industrial Insurance Act. Eserhut's former employer Utility Vault Company cross–appeals, contending that it should have received attorney fees.

FACTS

Eserhut was employed as a design engineer by Utility Vault from 1979 to October 1983. Heister and Weist were design engineers and worked in the same office as Eserhut. Venn was employed as a salesman and his desk was located in another part of the office building.

During 1980 and 1981, Eserhut and the coemployees worked together on standard engineering projects, and their relationship was good. During 1982, however, the coemployees became jealous of Eserhut when he began working with company management on a special project. On occasion, Eserhut referred to some of the coemployees in "unfortunate language terms." These comments, together with personality conflicts and the coemployees' jealousy, led to a deterioration in Eserhut's relationship with them.

After the special project was completed in January 1983, Eserhut was required to work and interact with the coemployees once again on standard projects. However, as a group, they isolated Eserhut by not communicating with and socially ostracizing him. These actions interfered with

Eserhut's work, and he experienced sleeplessness, depression, and indigestion.

On several occasions, Eserhut solicited help from management, who advised the coemployees that their actions were harmful to the company and encouraged them to get along with Eserhut. However, nothing changed.

In mid–October 1983, Eserhut felt he had no reasonable alternative but to resign his employment. He communicated his intention to the company president, who asked him to delay his decision until that afternoon. Later, the president called Eserhut and informed him that the three coemployees had "voted him out." This was only a figurative expression; no actual vote took place, and the coemployees had no authority to hire or fire other employees. The president then acquiesced in Eserhut's decision to leave.

Initially, Eserhut brought this suit against the coemployees only. Later, Utility Vault was joined on the theory that it had ratified the coemployees' actions. The trial court found in favor of all defendants. With regard to the coemployees, the trial court concluded that the effect of their actions on Eserhut was to interfere with his work, that it was unlikely anyone would have been comfortable in the same situation, that their actions had caused Eserhut to terminate his employment relationship, and that Eserhut's damages were in the amount of $48,500. However, the trial court decided that the coemployees could not be held liable for the tort of intentional interference because their actions had focused on Eserhut, rather than on Utility Vault, and because the actions did not cause Utility Vault to terminate Eserhut.

### Appeal

Eserhut contends that the trial court failed to apply the correct rule of law when it determined that Eserhut's coemployees could not be held liable for the tort at issue. We agree.

■ Washington law had defined the elements of intentional interference with a business relationship as

(1) existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy by the alleged interfering party; (3) intentional interference inducing or causing breach or termination of the relationship or expectancy; and (4) resultant damage.

*Sea–Pac Co. v. United Food & Comm'l Workers, Local 44,* 103 Wn.2d 800, 805, 699 P.2d 217 (1985). The defendant's actions may focus on either party to the contract. For example, liability may be imposed when the defendant has intentionally interfered with a *third person's performance* of his existing contract with the plaintiff. *See F.D. Hill & Co. v. Wallerich,* 67 Wn.2d 409, 414, 407 P.2d 956 (1965) (defendant–buyer promised seller of land that he would "take care of" plaintiff–broker's sales commission, but failed to do so); Restatement (Second) of Torts § 766 (1979).[1] In addition, liability may be imposed when the defendant has intentionally interfered with the *plaintiff's performance* of his own contract with a third person. *See Pacific Typesetting Co. v. International Typographical Union,* 125 Wash. 273, 216 P. 358, 32 A.L.R. 767 (1923) (defendant–union coerced employees to strike in order to render it impossible for plaintiff employer to complete its printing contracts with other companies); *see* Restatement (Second) of Torts § 766A.[2] The same analysis applies when the contractual relations are prospective, *i.e.,* not yet

---

[1]Restatement (Second) of Torts § 766 provides: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

[2]Restatement (Second) of Torts § 766A provides: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

reduced to contract. *Pleas,* at 832; *see* Restatement (Second) of Torts § 766B.[3]

Applying the foregoing analysis to the facts of the present case, it becomes clear that if the elements of the tort are otherwise met, then the coemployees can be held liable for intentionally interfering with Eserhut's employment with Utility Vault.[4] Other jurisdictions have reached the same conclusion under similar facts. *See Lewis v. Oregon Beauty Supply Co.,* 302 Or. 616, 733 P.2d 430 (1987) (defendant–son of employer held liable to plaintiff–employee who quit as a result of defendant's harassment); *Kyriazi v. Western Elec. Co.,* 461 F. Supp. 894 (D.N.J. 1978) (defendant–employees who harassed plaintiff–employee held liable).

Although we have found that the trial court applied the wrong standard of law, we cannot reverse the decision because the trial court's findings on intent, the third element of the cause of action, are ambiguous. Finding of fact 10 states that "the actions of the individual defendants were intentional". However, finding of fact 19 states that "[n]one of the acts or omissions complained of . . . or omitted by the individual defendants . . . was done with

---

[3]Restatement (Second) of Torts § 766B provides: "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

"(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

"(b) preventing the other from acquiring or continuing the prospective relation."

[4]The record does not contain any evidence that Eserhut had an employment contract for a fixed period; consequently, we assume that his employment was terminable at will. *See Parker v. United Airlines, Inc.,* 32 Wn. App. 722, 725, 649 P.2d 181, *review denied,* 98 Wn.2d 1011 (1982). A contract that is terminable at will is until terminated, valid and subsisting, and the defendant may not interfere with it. One's interest in such a contract is primarily in future relations between the parties and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to an interference with prospective contractual relations. *See* Restatement (Second) of Torts § 766, comment *g.*

deliberate intention within the meaning of RCW [51.24-.020]." Because this is a fact question, we cannot resolve it and, therefore, remand for clearer findings and application of the correct rule of law.

## CROSS APPEAL

Having determined that a remand is necessary, we are compelled to address the coemployees' argument on cross appeal. They maintain that the trial court erred when it failed to dismiss the action against them based on the exclusivity doctrine of the Industrial Insurance Act (Act). *See* RCW 51.04.010.[5] Generally, the exclusivity provisions of the Act bar an action against an employer for an injury incurred by the worker in the course of employment. *Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 72–73, 747 P.2d 1103 (1987), *review denied*, 110 Wn.2d 1016 (1988). The bar to suit is lifted, however, when the employer has deliberately intended to injure the worker, *see* RCW 51.24.020,[6] *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 753, 696 P.2d 1238 (1985); or the tort action is brought against a "third person, not in a worker's same employ". *See* RCW 51.24.030.[7]

---

[5]In pertinent part, RCW 51.04.010 provides: "[A]ll phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided."

[6]RCW 51.24.020 provides:
"Action against employer for intentional injury. If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title."

[7]RCW 51.24.030 provides in part:

■ *Newby v. Gerry,* 38 Wn. App. 812, 690 P.2d 603 (1984) controls. There, the plaintiff sued his coemployee, alleging that the coemployee intentionally assaulted him during the course of employment. The coemployee's argument that the Act's exclusivity doctrine barred the action was rejected by the court on appeal. After examining the applicable statutes, the appellate court found (1) that the Act was ambiguous with respect to whether an employee could sue a coemployee for an intentional tort, (2) that merely because the Act allowed an employee to sue a person other than one "in the same employ" did not mean that the employee could not sue one in the same employ, and (3) that allowing the suit would, in fact, further the policies of the Act. *Newby,* at 822; *see also Houser v. Redmond,* 91 Wn.2d 36, 40, 586 P.2d 482 (1978) (The plaintiff sued his former employer for tortious interference with his contract of employment based upon the actions of his former coemployees. On appeal, the court stated in dictum that if the actions of the coemployees were not within the scope of their employment, then they were third parties who were potentially liable for the tort.).

We find unpersuasive the coemployees' attempt to distinguish *Newby* on the ground that *Newby* involved an assault, while the present case does not. The *Newby* court did not limit its holding to cases involving assaults, but stated that the presence of an intentional tort, as opposed to negligence, is crucial. *Newby,* at 822. We, therefore, hold that the Act does not bar Eserhut's action against the coemployees.

Last, we address Utility Vault's argument on cross appeal that the trial court erred when it decided that the action against Utility Vault was not frivolous. RCW 4.84.185 authorizes the trial court to award attorney fees against a

"(1) If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person."

nonprevailing party "upon written findings . . . that the action . . . was frivolous and advanced without reasonable cause". The decision to make the award is left to the trial court's discretion and will not be disturbed in the absence of a clear showing of abuse. *Fluke Capital & Mgt. Servs. v. Richmond,* 106 Wn.2d 614, 625, 724 P.2d 356 (1986). We find no abuse of discretion here.

Noting that a party to a contract cannot be held liable in tort for interference with that contract, the *Houser* court further reasoned that the defendant–employer could not be held liable to one employee based on the actions of its other employees. *Houser,* at 39. The plaintiff's argument that the other employees should be considered third parties for purposes of the tort claim was rejected because (1) if the coemployees were acting within the scope of their employment, then their actions were the actions of the employer; and (2) if their actions were not within the scope of their employment, then their actions would not be chargeable to the employer under the doctrine of respondeat superior. *Houser,* at 39–40.

Eserhut's claim at trial against Utility Vault was not based on a respondeat superior theory, however. He, instead, argued that his coemployees had acted outside the scope of their employment and that Utility Vault then "ratified" the coemployees' improper actions by providing them with money for their defense. A frivolous action has been defined as one that cannot be supported by any rational argument on the law or facts. *Bill of Rights Legal Found. v. Evergreen State College,* 44 Wn. App. 690, 696–97, 723 P.2d 483 (1986). Although we agree with the trial court's rejection of Eserhut's ratification argument, we conclude that the action was not frivolous.

In conclusion, Eserhut's case against the coemployees is reversed and remanded back to the trial court for application of the correct standard of law and resolution of the

ambiguity in the findings of fact. Eserhut's request for sanctions pursuant to RAP 18.9 is denied.

COLEMAN, A.C.J., and SCHUMACHER, J. Pro Tem., concur.