[No. 26123-1-I. Division One. July 22, 1991.]

LEN ESERHUT, *Respondent*, v. STEVE HEISTER, ET AL, *Appellants*.

---

*Norman W. Cohen* and *Cohen & Keith-Miller, Inc., P.S.,* for appellants.

*Richard J. Wotipka* and *Broihier & Wotipka; Douglass A. North* and *Maltman, Weber, Reed, North & Ahrens,* for respondent.

BAKER, J. — Steve Heister, Tom Weist and Gary Venn (hereinafter coemployees), appeal a judgment in favor of

the plaintiff, Leonard Eserhut. On remand after an earlier appeal,[1] the trial court found that the coemployees had the requisite intent to establish liability for the tort of intentional interference with a business relationship. We reverse.

## FACTS

Eserhut was employed by Utility Vault from 1979 to 1983. In 1982, serious personality conflicts developed between Eserhut and the coemployees. In January of 1983, the coemployees began to isolate Eserhut by socially ostracizing him. Eserhut complained to management, but the situation did not improve. In October of 1983, Eserhut resigned and subsequently commenced suit against the coemployees for the tort of intentional interference with a business relationship.[2]

In the first trial, the court found that the coemployees' actions interfered with Eserhut's work. This finding lacks specificity and must be interpreted, therefore, by resort to the oral opinion. *See In re LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986). In its oral opinion, the trial court explained that the impact of the negative social contact in Eserhut's workplace was significant, causing him sleeplessness and depression. The trial court found those reactions eventually began to interfere with his work. It also found, however, that there was no direct sabotage of Eserhut's work, and no criticism of him that reached management. Thus, the court ruled in favor of the coem-

---

[1]*Eserhut v. Heister*, 52 Wn. App. 515, 762 P.2d 6 (1988) (hereinafter *Eserhut* I).

[2]The elements of the tort of intentional interference with a business relationship are:
> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. . . .

*Pleas v. Seattle*, 112 Wn.2d 794, 800, 774 P.2d 1158 (1989) (quoting *Calbom v. Knudtzon*, 65 Wn.2d 157, 162-63, 396 P.2d 148 (1964)).

ployees, reasoning that the coemployees could not be held liable because their actions focused on Eserhut rather than on the employment relationship and the coemployees did not cause the employer to terminate Eserhut.[3]

In the first appeal, this court held that the coemployees' status as Eserhut's co-workers did not shield them from liability merely because their actions were directed at the plaintiff as opposed to a third person. *Eserhut v. Heister*, 52 Wn. App. 515, 762 P.2d 6 (1988) (hereinafter *Eserhut I*). The court, citing Restatement (Second) of Torts § 766A,[4] stated that "liability may be imposed when the defendant has intentionally interfered with the *plaintiff's performance* of his own contract with a third person." *Eserhut* I, 52 Wn. App. at 518. Holding that the trial court's findings of fact were ambiguous as to whether the coemployees' interference was intentional, this court remanded to the trial court.[5] On remand, the trial court entered additional findings that it found the coemployees' conduct to be intentional, and entered judgment for Eserhut. The coemployees appeal that judgment.

---

[3]The trial court rejected the coemployees' claim that the action was barred by the Industrial Insurance Act (IIA). The Court of Appeals affirmed the trial court on this issue. *Eserhut* I, 52 Wn. App. at 520-21.

[4]Restatement (Second) of Torts § 766A provides: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

[5]The Court of Appeals remanded "for application of the correct standard of law and resolution of the ambiguity in the findings of fact", *Eserhut* I, 52 Wn. App. at 522-23, stating: "[W]e cannot reverse the decision because the trial court's findings on intent, the third element of the cause of action, are ambiguous. Finding of fact 10 states that 'the actions of the individual defendants were intentional.' However, finding of fact 19 states that '[n]one of the acts or omissions complained of . . . or omitted by the individual defendants . . . was done with deliberate intention within the meaning of RCW [51.24.020].' Because this is a fact question, we cannot resolve it and, therefore, remand for clearer findings and application of the correct rule of law." *Eserhut* I, 52 Wn. App. at 519-20.

14

The coemployees claim that the Court of Appeals erred in *Eserhut* I when it determined on the facts of this case that they could be held liable for intentionally interfering with Eserhut's business relationship. We agree.

■ We are aware that "[w]here there has been a determination of the applicable law in a prior appeal, the law of the case doctrine ordinarily precludes redeciding the same legal issues in a subsequent appeal." *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988). This doctrine is contained in RAP 2.5(c)(2) which states:

> *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, *where justice would best be served*, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

(Italics ours.) In accordance with RAP 2.5(c)(2), the court in *Folsom* stated that

> [r]econsideration of an identical legal issue in a subsequent appeal of the same case will be granted where the holding of the prior appeal is clearly erroneous and the application of the doctrine would result in manifest injustice.

*Folsom*, 111 Wn.2d at 264.

We hold that the circumstances of this case require reconsideration of the potential liability of the coemployees in order to avoid manifest injustice.

In *Eserhut* I, this court uncritically accepted the proposition that coemployees may be liable for intentional interference with a business relationship between a plaintiff and his employer where the plaintiff resigns employment due to his emotional reaction to social ostracism by the coemployees. This is a novel proposition. Without careful circumscription, such a concept can lead to pernicious results in the workplaces of this state and, ultimately, in our courtrooms.

The court in *Eserhut* I cited two cases from other jurisdictions in support of its holding on this issue. When the facts of those cases are compared with the instant matter, it becomes clear that those cases do not stand for the broad proposition for which they were cited.

*Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 733 P.2d 430 (1987) involved much more than social ostracism. When his romantic intentions were rejected by the plaintiff, the company owner's son, a coemployee of the plaintiff, told other employees the plaintiff would not be working there much longer. In addition to defaming, threatening and physically and verbally intimidating her, he refused to cooperate with her when she required information necessary to function in her job. *Lewis*, 733 P.2d at 432-34. The defendant's conduct would have satisfied the stringent requirements of the tort of outrage in this jurisdiction, and was held to satisfy the elements of intentional infliction of emotional harm. As the Oregon court noted, the intent element of the tort of intentional interference with a business relationship requires that the tortfeasor "knows that the interference is substantially certain to occur from his action and is a necessary consequence thereof". *Lewis*, at 621 (quoting *Straube v. Larson*, 287 Or. 357, 361, 600 P.2d 371 (1979)).

The case of *Kyriazi v. Western Elec. Co.*, 461 F. Supp. 894 (D.N.J. 1978), *modified*, 473 F. Supp. 786 (1979), was a liability determination in a civil rights class action based primarily upon Title 7 of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The District Court devoted 1 page of a 53-page opinion to the holding for which the court in *Eserhut* I cited the case. No extensive analysis supported the holding, which was based upon a finding that the plaintiff's coemployees harassed her and her supervisors discriminated against her *for the specific purpose of causing the termination of her employment.* *Kyriazi*, 461 F. Supp. at 950.

■ Fairly read, these cases stand for no more than the proposition that when coemployees intentionally, directly,

and substantially interfere with the performance of the plaintiff's work responsibilities, knowing that plaintiff's termination is a substantially certain consequence thereof, they risk liability for intentional interference with a business relationship.

Far less has been proven in this case. The trial court noted in its oral ruling that the defendants' conduct amounted to social ostracism. It did not constitute the tort of outrage, and it did not focus on the employer-employee relationship directly.

Thus, we hold that the defendants cannot be held liable here, since the evidence did not show that they acted with the intent and result of directly interfering with the performance of plaintiff's work responsibilities. We therefore reverse the judgment in favor of Eserhut.

FORREST, J. (concurring) — I have joined in Judge Baker's cogent opinion. I write separately only to emphasize the lack of a sound foundation in legal theory for the *Eserhut I*[6] decision and the pernicious consequences that could follow if it remains the law in Washington.

The United States Congress and the Washington Legislature have passed legislation to eliminate discrimination on the basis of race, gender, age, handicap and religion from the workplace. Additionally, there is detailed regulation of the safety aspects of the workplace and to protect union activity by employees. In view of this pervasive regulation and in the total absence of any legislative direction, I find it inappropriate for the courts to expand the parameters of tortious interference to include unsociable conduct of coemployees as a basis for such a claim.

There is no constitutional, statutory, or common law duty requiring an employee to be socially friendly with his or her coemployees. Conversely, an employee does not have any "right" to social friendship from his coem-

---

[6]*Eserhut v. Heister*, 52 Wn. App. 515, 762 P.2d 6 (1988).

ployees. Eserhut makes no claim to come within any statutory protection. Here, there is no claim or proof that Eserhut was prevented from performing his duties by lack of cooperation by coemployees. Indeed, his employer was satisfied with his work and would like for him to have continued. This is not a case where Eserhut was physically or economically prevented from performing his contract, but merely a case where he was unhappy with his treatment by his coemployees. Such purely subjective unhappiness would be an insufficient basis to justify his breach of a contract with his employer and is likewise an insufficient basis for asserting tortious interference with his employment contract. Such a cause of action would not only spawn workplace litigation between coemployees but would have other ramifications which are impossible to forecast. Clearly, if this conduct supports a tortious interference claim, it would furnish a justifiable reason for terminating employment and thus support a claim for unemployment compensation. Additionally, if Eserhut was justified in breaching his contract, so would any tenant who felt socially ostracized by the joint action of his neighbors be justified in breaching his lease and then suing the neighbors. Strikingly, plaintiff has been unable to cite a single case sustaining a claim for tortious interference on facts substantially similar to those here present. The lack of such authority might not be fatal if there were strong policy reasons justifying expansion of the tortious interference claim. Here there are none.

WEBSTER, A.C.J. (dissenting) — I respectfully dissent. Under the "law of the case doctrine" this court should not reverse its prior decision.

The majority correctly states that "[w]here there has been a determination of the applicable law in a prior appeal, the law of the case doctrine ordinarily precludes

redeciding the same legal issues in a subsequent appeal." *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988); RAP 2.5(c)(2). In accordance with RAP 2.5(c)(2), the court in *Folsom* stated that

[r]econsideration of an identical legal issue in a subsequent appeal of the same case will be granted where the holding of the prior appeal is clearly erroneous and the application of the [law of the case] doctrine would result in manifest injustice.

*Folsom*, at 264. The majority holds that "the circumstances of this case require reconsideration of the potential liability of the coemployees in order to avoid manifest injustice." Majority, at 14. I disagree. First, *Folsom* appears to require that the decision be both manifestly unjust *and* clearly erroneous. The majority does not claim that the decision in *Eserhut v. Heister*, 52 Wn. App. 515, 762 P.2d 6 (1988) (*Eserhut* I) was "clearly erroneous". Second, there is no authority supporting the proposition that an employee cannot be held liable in tort for intentionally interfering with his co-worker's business relationship with their mutual employer.

RAP 2.5(c)(2) allows this court to review the propriety of an earlier decision and "*where justice would best be served,* decide the case on the basis of the appellate court's *opinion of the law* at the time of the later review." (Italics mine.) The mere fact that the majority views the facts of this case differently than the court in *Eserhut* I does not render that decision manifestly unjust or clearly erroneous. The majority distinguishes the cases relied on in *Eserhut* I on their facts (*Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 733 P.2d 430 (1987); *Kyriazi v. Western Elec. Co.,* 461 F. Supp. 894 (D.N.J. 1978), *modified,* 473 F. Supp. 786 (1979)). However, it is the court's review of the law that must render the decision improper. Here there are no facts or circumstances which lead me to believe

that "justice would best be served" by redeciding the legal issues of *Eserhut* I.

Reconsideration denied August 29, 1991.

Review denied at 118 Wn.2d 1009 (1992).