918 P.2d 905 (1996)
129 Wash.2d 416
The STATE of Washington, Petitioner,
v.
Billy W. WORL, Jr., Respondent.
No. 62173-0.
Supreme Court of Washington, En Banc.
Argued May 17, 1995.
Decided June 27, 1996.
*906 Jim Sweetser, Spokane County Prosecutor, Kevin M. Korsmo, Deputy, Spokane, for petitioner.
Michael F. Keyes, Spokane, for respondent.
TALMADGE, Justice.
The present case is the second appeal relating to the propriety of the trial court's exceptional sentence for Billy Wayne Worl, Jr., who was convicted of malicious harassment under RCW 9A.36.080(1)(a). The Court of Appeals, without reference to the analysis in its earlier decision of the factors supporting an exceptional sentence, vacated Worl's exceptional sentence finding that the factors it had previously approved did not support an exceptional sentence. We hold that the law of the case doctrine precludes reconsideration by the Court of Appeals of conclusions it had reached previously on the factors supporting Worl's exceptional sentence. We reverse the Court of Appeals, but remand the case to the trial court for reconsideration of whether the imposition of consecutive sentences is appropriate.

ISSUES
1. Does the law of the case doctrine bar reconsideration of issues the Court of Appeals decided in Worl's first appeal with respect to his exceptional sentence?
2. Did the trial court clearly err in considering deliberate cruelty and multiple injuries to compute an exceptional sentence for malicious harassment?

FACTS
Worl and his friend, who were members of a local "skinhead" group, beat and slashed with a knife an African-American man early one morning in a Safeway parking lot in Spokane. The victim sustained five slash wounds, four of which required 20 or more stitches. State v. Worl, 58 Wash.App. 443, 443, 794 P.2d 31 (1990) (Worl I). After the jury had found him guilty of attempted second degree murder and malicious harassment, the trial judge sentenced Worl to 15 years, using several aggravating factors, including multiple injuries, future dangerousness, and deliberate cruelty, to support an exceptional sentence for the malicious harassment conviction. Although the standard range was 12 to 14 months, the court sentenced Worl to 60 months for malicious harassment. The sentence for the attempted second degree murder conviction was within the standard range, 120 months. The court ordered the sentences to run consecutively. State v. Worl, 74 Wash.App. 605, 608, 875 P.2d 659 (1994) (Worl II).
*907 Worl appealed. The Court of Appeals, Division III, affirmed. Worl I, at 446, 794 P.2d 31. Worl then petitioned for review. This court granted Worl's petition for review solely on the issue of whether future dangerousness can be an aggravating factor justifying an exceptional sentence for a nonsexual crime. State v. Worl, noted at 115 Wash.2d 1022, 804 P.2d 9 (1990). On review, this court held in State v. Barnes, 117 Wash.2d 701, 818 P.2d 1088 (1991) (considering three consolidated cases, including Worl's), that the trial court should not have used future dangerousness as one of the aggravating factors, and remanded the case without instructions for resentencing.
At the resentencing hearing, the same trial judge once again sentenced Worl to 15 years, even though future dangerousness was no longer an aggravating factor the trial court could consider to determine the sentence.
Worl appealed once again. Although the Court of Appeals had affirmed the trial court's use of multiple injuries and deliberate cruelty as aggravating factors justifying the exceptional sentence the first time it heard Worl's appeal, the Court of Appeals held in the second appeal that the trial court had improperly applied those factors to the malicious harassment charge.[1] The Court of Appeals remanded the case for resentencing within the standard range. Worl II, at 616, 875 P.2d 659.
The State then petitioned for review. Worl filed an answer and petitioned for review of his assertion that malicious harassment is not a substantive crime, but only a sentence enhancer. This court granted the State's petition and denied Worl's petition. State v. Worl, noted at 125 Wash.2d 1014, 890 P.2d 20 (1995).

ANALYSIS
1. The Law of the Case Doctrine
To justify the exceptional sentence of 60 months for the malicious harassment conviction, the trial court at the initial sentencing set forth the following aggravating factors:
A. The defendant's conduct constituted multiple incidents or injuries in that a number of injuries were inflicted on the victim, Ray Hill, one very serious, by the defendant with a knife.
B. The defendant's conduct constituted deliberate cruelty in that this was an attack on the victim by two people and what appears to be a persistence in the attack because as the victim attempted to run he was chased and again attacked. An indication of the deliberate cruelty is the taking of the victim's piece of conduit and his hat from the scene of the attack as if they were trophies.
C. The future dangerousness of the defendant as evidenced by the testimony of Dr. Thomas McKnight who had examined him at the request of the defense, and indicated that he was impulsive and had an inability to control himself.
D. The fact that this was not the "typical" Malicious Harassment case in that the injuries were substantial and the conduct of the defendant [was] beyond what could normally be expected to occur in a typical case.
Worl I, at 451-52, 794 P.2d 31 (emphasis added).
In affirming the trial court's sentence in Worl I, the Court of Appeals said with respect to the trial court's use of multiple injuries as an aggravating factor: "We find the multiple stab wounds inflicted by Mr. Worl are more properly considered multiple injuries and the court was correct in considering those injuries as an aggravating factor." Worl I, at 452, 794 P.2d 31. With respect to the trial court's use of deliberate cruelty as an aggravating factor, the Court of Appeals said:
As to the second factor, deliberate cruelty, Mr. Worl argues there is insufficient evidence to support this finding....
Mr. Worl failed to assign error to the court's findings, and thus they are verities. State v. Harmon, 50 Wash.App. 755, 757, 750 P.2d 664, review denied, 110 Wash.2d *908 1033 (1988). In any event, the findings are supported by the record and are not clearly erroneous.... There is no error.
Worl I, at 452, 794 P.2d 31. Thus, the parties fully litigated the questions of whether the trial court properly employed multiple injuries and deliberate cruelty as aggravating factors to justify the exceptional sentence, and the Court of Appeals rendered decisions on those questions in Worl I.
At the resentencing hearing, the trial court heard testimony from several witnesses, including Worl, and listened to the arguments of counsel. The court then announced its sentence:
The sentence the Court previously imposed with respect to the Attempted Second Degree Murder is within the standard range. I do not have to address that. I do find that with respect to the Malicious Harassment, that there are two aggravating factors and circumstances which in my judgment warrant an exceptional sentence. Those are the multiple wounds inflicted upon Mr. Hill coupled that with the persistence in the attack upon Mr. Hill. There is evidence, in my judgment, of gratuitous violence. I find, with respect to that conviction, that there was deliberate cruelty.... I want to make it clear that this Court's primary motivating factor is multiple injuries and deliberate cruelty either of which standing alone, in this Court's judgment, are sufficient upon which to base an exceptional sentence.
Report of Proceedings, at 81-82.[2] Thus, the trial court, in reconsidering its exceptional sentence upon remand from this court, plainly stated that it based the exceptional sentence on multiple injuries and deliberate cruelty, either one of which standing alone justified the exceptional sentence. The court once again imposed a 60-month sentence for the malicious harassment offense.
On appeal from the resentencing, Worl assigned error to the trial court's findings of fact with respect to multiple injuries and deliberate cruelty, and to the trial court's conclusion of law that those aggravating factors constitute substantial and compelling reasons to impose an exceptional sentence. He also asserted the trial court abused its discretion by imposing the exceptional sentence because "(1) the aggravating factors are not supported by the record; (2) the aggravating factors do not justify an exceptional sentence; (3) the sentence is excessive; and (4) it is solely the result of the abuse of discretion by the trial court." Br. of Appellant, at 4.[3]
The State responded that the law of the case doctrine precluded the Court of Appeals from reconsidering the same issues it had decided in Worl I. Noting that the "sentencing-related issues were all raised and decided by this court in the first appeal," the State argued that the aggravating factors had already been litigated in Worl I. Br. of Resp't, at 33.
The Court of Appeals cursorily dismissed the State's law of the case argument: "This is a direct appeal following resentencing. Accordingly, the trial court's sentence is again properly before this court for review." Worl II, at 614, 875 P.2d 659. The Court of Appeals cited two cases for support, State v. Collicott, 118 Wash.2d 649, 654, 827 P.2d 263 (1992), and State v. Hillman, 66 Wash.App. 770, 778 n. 6, 832 P.2d 1369, review denied, 120 Wash.2d 1011, 841 P.2d 47 (1992).
Neither of the two cases the Court of Appeals cited discusses the law of the case *909 doctrine. In Collicott, this court held that it was permissible, on resentencing, to impose an exceptional sentence where the court in the initial sentence had incorrectly determined the offender score. This court said, "Imposition of an exceptional sentence is directly related to a correct determination of the standard range. That determination can be made only after the offender score is correctly calculated." Collicott, at 660, 827 P.2d 263. Thus, redetermination of the sentence was appropriate upon correction of the trial court's previous misinterpretation of the offender score.
In Hillman, the Court of Appeals remanded the case for resentencing in the wake of the Barnes decision that future dangerousness cannot be an aggravating factor justifying an exceptional sentence for a first degree murder conviction. The court stated that it would not then consider the defendant's contention that his sentence was excessive, but that he could make that claim in another appeal subsequent to his resentencing. Hillman, at 778 n. 6, 832 P.2d 1369. Thus, the court in Hillman merely made the unremarkable comment that, since the court had declined to address the issue, the defendant could appeal his exceptional sentence after resentencing. Neither Collicott nor Hillman provides any support whatsoever for the proposition that the Court of Appeals could reconsider the identical issues it had previously decided. The law of the case doctrine demands a different result.
Proper consideration of the law of the case doctrine begins with Greene v. Rothschild, 68 Wash.2d 1, 414 P.2d 1013 (1966), which is the "foundation case for modern analysis" of the law of the case doctrine. Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH.L.REV. 805, 810 (1985). In Greene, this court held that the law of case doctrine is a discretionary rule that should not be applied when the result would be "manifest injustice":
Under the doctrine of "law of the case," as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are "authoritatively overruled." ... Such a holding should be overruled if it lays down or tacitly applies a rule of law which is clearly erroneous, and if to apply the doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside.
Greene, at 10, 414 P.2d 1013. In 1976, this court adopted RAP 2.5(c), codifying the law of the case doctrine:

Prior Appellate Court Decision. The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.
Despite the apparent permissiveness of the language of the rule, this court and the courts of appeals in the years since the adoption of RAP 2.5(c) have adhered to the standards set forth in Greene, requiring that an appellate court may reconsider only those decisions that were clearly erroneous and that would work a manifest injustice to one party if the clearly erroneous decision were not set aside.
In Folsom v. County of Spokane, 111 Wash.2d 256, 263-64, 759 P.2d 1196 (1988), this court further articulated the law of the case doctrine:
As noted, this is the second appeal of the 1983 case. Where there has been a determination of the applicable law in a prior appeal, the law of the case doctrine ordinarily precludes redeciding the same legal issues in a subsequent appeal.
It is also the rule that questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause. The Supreme Court is bound by its decision on the first appeal until such time as it might be authoritatively overruled.
(Citations omitted.) Adamson v. Traylor, 66 Wash.2d 338, 339, 402 P.2d 499 (1965); Greene v. Rothschild, 68 Wash.2d 1, 7, 402 P.2d 356, 414 P.2d 1013 (1965).

*910 . . . .
Reconsideration of an identical legal issue in a subsequent appeal of the same case will be granted where the holding of the prior appeal is clearly erroneous and the application of the doctrine would result in manifest injustice.
Under the doctrine of "law of the case," as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are "authoritatively overruled." Such a holding should be overruled if it lays down or tacitly applies a rule of law which is clearly erroneous, and if to apply the doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside.
(Citations omitted.) Greene, at 10, 414 P.2d 1013.
Folsom, at 263-64, 759 P.2d 1196. See also First Small Business Inv. Co. v. Intercapital Corp., 108 Wash.2d 324, 738 P.2d 263 (1987); State v. Mannhalt, 68 Wash.App. 757, 845 P.2d 1023 (1992); Eserhut v. Heister, 62 Wash.App. 10, 812 P.2d 902 (1991). We reaffirm Greene and Folsom here.
The court in Worl II did not consider whether its earlier holdings in Worl I were clearly erroneous.[4] Rather, it simply embarked upon a reconsideration of the propriety of the trial court's use of multiple injuries and deliberate cruelty as aggravating factors in the malicious harassment conviction, an analysis it had undertaken and completed in Worl I.
The law of the case doctrine precludes the Court of Appeals' reconsideration of the sentencing issues it had decided in Worl I. Under the Greene standard, we find nothing in the record to justify a reconsideration of the sentencing issues the Court of Appeals decided in Worl I. As the following analysis shows, the court's decision in the first appeal was not clearly erroneous; nor would application of the law of the case doctrine be manifestly unjust to Worl.
2. Worl's Exceptional Sentence
The Court of Appeals in Worl II held that the sentencing court improperly used multiple injuries and deliberate cruelty as aggravating factors to determine the sentence for the malicious harassment conviction. The court reasoned that multiple injuries and deliberate cruelty related to the crime of attempted second degree murder, and therefore, pursuant to RCW 9.94A.370(2),[5] cannot be used as aggravating factors for another crime. Worl II, at 664, 875 P.2d 659.
The court based its reasoning on its prior holding that the crime of malicious harassment was complete when the victim exited his car because it was only after he exited his car that the physical assault occurred. Worl I, at 451, 794 P.2d 31. The Worl I court had analyzed the chronology of the two crimes, malicious harassment and attempted second degree murder, in order to respond to Worl's argument that the trial court calculated his offender score incorrectly by holding that the two offenses did not constitute the same criminal conduct under RCW 9.94A.400(1). The court said:
Here, the original conduct reflected Mr. Worl intended to harass Mr. Hill as evidenced by his language. The crime of malicious harassment was complete when Mr. Worl assaulted Mr. Hill when he exited his car. The repeated slashing evidenced more than an intent to harass by causing physical injury, but evidenced an intent to kill Mr. Hill. We find Mr. Worl's offender score was properly computed.
Worl I, at 451, 794 P.2d 31. Because, according to the Court of Appeals, the malicious harassment ended before the knife attack began, the court concluded that the aggravating *911 factors of deliberate cruelty and multiple injuries could not possibly relate to the malicious harassment offense, but only to the attempted second degree murder charge.
The Court of Appeals' reasoning is flawed. Its holding in Worl I and Worl II that the offense of malicious harassment was complete by the time the victim had exited the car was not a finding of fact or a conclusion of law by the trial court. The State charged Worl with violation of RCW 9A.36.080(1)(a), the part of the malicious harassment statute requiring physical injury:
(1) A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap:
(a) Causes physical injury to the victim or another person [.]
(Emphasis added.) Worl was convicted under the foregoing subsection of the malicious harassment statute. Thus, the Court of Appeals cannot be correct in its holding that the malicious harassment ended before the victim sustained injury. In order for Worl to have been convicted as charged under RCW 9A.36.080(1)(a), the jury must have concluded he suffered physical injury in part as the result of the malicious harassment.[6] That being the case, the reasons the sentencing court provided for applying the aggravating factors of multiple injuries and deliberate cruelty to the malicious harassment offense are supported by the record in light of the elements of that crime set forth in RCW 9A.36.080(1)(a).[7]

CONCLUSION
Courts should apply the law of the case doctrine in cases like this. All the sentencing issues were litigated and decided in Worl I. The Court of Appeals should not have revisited those issues in Worl II without first concluding that its decision in Worl I was clearly erroneous and worked a manifest injustice on Worl.
That the decision in Worl I was not clearly erroneous emerges from the analysis of the sentencing issues relating to the elements of the crime of malicious harassment under which Worl was charged and convicted. Because RCW 9A.36.080(1)(a) includes the element of physical injury, it was not clearly erroneous for the trial court to employ multiple injuries and deliberate cruelty as aggravating factors justifying the exceptional sentence.
Worl assigned error to the trial court's failure to decide that the two offenses for which he was convicted comprised the "same criminal conduct." In view of our disposition of this case, we now hold the two offenses did comprise the "same criminal conduct" as a matter of law under RCW 9.94A.400(1). We remand this case for resentencing so the trial court may determine whether consecutive sentences are now appropriate pursuant to RCW 9.94A.400(1) and RCW 9.94A.120(16).
DURHAM, C.J., DOLLIVER and SMITH, JJ., and PEKELIS, J. Pro Tem., concur.
*912 MADSEN, Justice (dissenting).
The majority unfairly criticizes the Court of Appeals for reconsidering its opinion in State v. Worl, 58 Wash.App. 443, 794 P.2d 31 (1990) (Worl I). Relying on its own interpretation of the law of the case doctrine the majority states: "The law of the case doctrine precludes the Court of Appeals' reconsideration of the sentencing issues it had decided in Worl I." Majority at 910. Using its erroneous interpretation of the doctrine, the majority then attempts to prove that the court's decision in Worl I was not clearly erroneous. In so doing, the majority misapplies the "law of the case doctrine" and overrules, in part, Worl I. I dissent.

LAW OF THE CASE DOCTRINE
The procedural history of this case makes it questionable whether the law of the case doctrine should be applied. Where, as here, a "question was not considered ... upon the first appeal, and ... [the appellant] is not precluded from now raising the question [on remand], [it] does not fall within the rule of `the law of the case.'" Columbia Steel Co. v. State, 34 Wash.2d 700, 706, 209 P.2d 482 (1949), cert. denied, 339 U.S. 903, 70 S.Ct. 516, 94 L.Ed. 1332 (1950). In Worl I, the defendant challenged his exceptional sentence on three bases. First, he argued that imposing separate sentences for each conviction violated double jeopardy. Second, he contended that the trial court erred in calculating his standard range because it failed to treat the two offenses as "same criminal conduct." Third, the defendant argued that evidence did not support the aggravating factors relied on by the trial court to justify its exceptional sentence. Worl I rejected each of these arguments.
On subsequent appeal to this court, the defendant's sentence was reversed because the trial court had imposed an exceptional sentence which was contrary to law. State v. Barnes, 117 Wash.2d 701, 818 P.2d 1088 (1991). The matter was remanded for imposition of a new sentence. On remand, the trial court again imposed an exceptional sentence, citing deliberate cruelty and multiple injuries as the aggravating factors. Worl again appealed his exceptional sentence. In State v. Worl, 74 Wash.App. 605, 875 P.2d 659 (1994) (Worl II), the Court of Appeals again reversed the exceptional sentence, this time holding that the sentence violated the real facts doctrine, an issue considered for the first time in Worl II.
In its haste to criticize the Court of Appeals for violating the law of the case doctrine, the majority fails to recognize the important fact that the Worl II court reversed the exceptional sentence on an issue never addressed in Worl I. The law of the case doctrine is a discretionary rule which presumes that rulings on a prior appeal will not be reviewed again. First Small Business Inv. Co. v. Intercapital Corp., 108 Wash.2d 324, 333, 738 P.2d 263 (1987). It is difficult to see how the law of the case doctrine applies to issues which were not addressed in an earlier opinion, particularly where, as here, the appellate court vacated the sentence and remanded for a new sentencing hearing. See State v. Collicott, 118 Wash.2d 649, 827 P.2d 263 (1992) (Collicott II) (reconsidering earlier decision following remand for new sentencing hearing without discussing "law of the case" doctrine); State v. Hillman, 66 Wash.App. 770, 832 P.2d 1369 (remanding for resentencing and recognizing that issue raised in first appeal regarding exceptional sentence may be raised again following resentencing), review denied, 120 Wash.2d 1011, 841 P.2d 47 (1992).
Even assuming the "law of the case" doctrine does apply, the majority misapplies the doctrine. Initially, the majority criticizes the Court of Appeals because it does not articulate why it finds its earlier decision erroneous. Majority at 910. The law of the case doctrine is now codified in RAP 2.5(c)(2). First Small Business Inv. Co., 108 Wash.2d at 332, 738 P.2d 263; Folsom v. Spokane, 111 Wash.2d 256, 264, 759 P.2d 1196 (1988). The rule provides:
The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the *913 appellate court's opinion of the law at the time of the later review.
RAP 2.5(c)(2).
Contrary to the majority's position, neither RAP 2.5(c)(2) nor the cases require an express statement by the appellate court outlining its reasons for reconsideration. See Folsom; First Small Business Inv. Co. The rule clearly provides, however, for the correction of error:
It is beyond question that the court should have the right to correct its own errors when the situation exists, so long as there is substantial and obvious reason for doing so.
Robert E. Baumann, Jr., Comment, Appeal and ErrorLaw of the CaseDiscretionary Rule, 2 Gonz.L.Rev. 105, 111 (1967). Here, as will be explained below, the real facts doctrine provided the Court of Appeals a substantial and obvious reason for correcting its earlier ruling.
The majority next unfairly criticizes the Court of Appeals because it did not demonstrate that its earlier ruling was "clearly erroneous." However, neither the cases nor the rule require the Court of Appeals to find that the earlier ruling is "clearly erroneous" before declining to apply the law of the case doctrine. The majority derails in misreading Greene v. Rothschild, 68 Wash.2d 1, 402 P.2d 356, adhered to in, 68 Wash.2d 1, 414 P.2d 1013 (1966), to mean that an appellate court may overrule its earlier decision only if that earlier decision was clearly erroneous. Majority at 909. (Emphasis added.) The majority overstates Greene. In Greene, the court recognized that it had made a clear error in a prior ruling in the case. The court explained that the law of the case doctrine should not, and indeed, would not, operate in that case. The court stated that its research had not disclosed
any case in which this court has recognized that a prior decision in the same case was clearly erroneous and yet has refused to overrule it, feeling restrained by the doctrine of "law of the case"[.]
Greene, 68 Wash.2d at 9-10, 414 P.2d 1013. Thus, far from establishing a "clearly erroneous" standard as the test for determining when the law of the case doctrine applies, the court in Greene merely refused to use that doctrine to perpetuate the clear error that it had previously made. Recognizing that the doctrine was a discretionary rule of practice, the court held that its decision not to apply the law of the case doctrine in Greene was appropriate because "the application of the doctrine would result in unfairness to the litigants and the perpetuation of judicial error." Id. at 10, 414 P.2d 1013. Since the very same policies are present in Worl, this court should refuse to invoke the law of case doctrine here.
Worl II is nearly identical to this court's decision in Collicott II, upon which the Court of Appeals here relied. In the first review of Collicott's sentence, this court held that burglary, rape, and kidnapping arose out of the "same criminal conduct." The matter was remanded for resentencing to allow the trial court to properly calculate the defendant's offender score. Following resentencing, the defendant again appealed. The Court of Appeals certified the second appeal to this court, which accepted review. In the second review, this court rejected its prior holding in State v. Collicott, 112 Wash.2d 399, 771 P.2d 1137 (1989) (Collicott I) regarding "same criminal conduct." Without even mentioning "law of the case doctrine," or analyzing whether its first ruling in Collicott I was "clearly erroneous," this court abandoned its "element sharing" analysis set out in Collicott I and decided to apply the furtherance test to determine "same criminal conduct." Collicott II, 118 Wash.2d at 668, 827 P.2d 263. The court stated, "[w]e do so because we are now convinced that double punishment is avoided under the [State v.] Dunaway [109 Wash.2d 207, 743 P.2d 1237 (1987)] approach and the merger doctrine." Id. at 668, 827 P.2d 263.
Similarly, the Court of Appeals in Worl II implicitly recognized that it had failed to apply the real facts doctrine, embodied in RCW 9.94A.370(2), in Worl I. Rather than perpetuate the error of Worl I, the Court of Appeals corrected its earlier decision, giving the defendant the benefit of a correct application of the law. The Court of Appeals did precisely what RAP 2.5 and the cases permit and may even require.
*914 Adherence to the law of the case doctrine is discretionary and the standard of review by this court should be abuse of that discretion. In order to find an abuse of discretion, this court must find that no reasonable judge could find that "justice would best be served" by deciding the case "on the basis of the appellate court's opinion of the law at the time of the later review." RAP 2.5(c)(2). On review, this court will endeavor to uphold an exercise of discretion by the lower courts. The majority here does not discuss the standard of review nor does it make a case to justify a reversal based on abuse of discretion. Instead, the majority analyzes whether the factual record can be read in such a way as to possibly demonstrate that the decision in Worl I was not "clearly erroneous." Apparently, the majority sees a different rule for this court from that which applies to the Court of Appeals, in determining when a court may reconsider its prior ruling.
The law of the case doctrine should not be used by this court to disapprove the Court of Appeals' failure to adhere to its earlier decision when this court must also overrule the Court of Appeal's earlier decision. That the majority must overrule Worl I, in part, vividly demonstrates that it has simply misapplied the law of the case doctrine.

REAL FACTS DOCTRINE
Ironically, in attempting to prove the decision in Worl I did not meet the "clearly erroneous" standard, the majority also overrules Worl I. In Worl I, 58 Wash.App. at 451, 794 P.2d 31, the Court of Appeals stated, "[t]he crime of malicious harassment was complete when Mr. Worl assaulted Mr. Hill when he exited his car. The repeated slashing evidenced more than an intent to harass by causing physical injury, but evidenced an intent to kill Mr. Hill." (Emphasis added). In Worl II, the Court of Appeals specifically relied on these same facts. From the above quotation it is clear that the Court of Appeals recognized that the charge of attempted second degree murder was based on the numerous wounds inflicted on Hill. None of the wounds, described as lacerations requiring stitches, were sufficient to kill Hill. Rather, as the Court of Appeals found, it was the number of repeated slashings and the persistence of the attack which evidenced an intent to kill Hill and which supported a charge of attempted second degree murder.
The court's conclusion is supported by the facts at trial. Worl and his companion Carver approached Hill as he sat in his vehicle at a Safeway parking lot. Worl made hostile, racially based remarks to Hill and kicked Hill's car. Hill reached for a pipe on the floor of his vehicle and exited the car. Worl rushed Hill and knocked the pipe from Hill's hand. Carver hit Hill from behind. Thereafter, Worl began the slashing which resulted in the charge of attempted murder. Worl I, 58 Wash.App. at 445-46, 794 P.2d 31. Based on these facts, the Court of Appeals correctly concluded that the malicious harassment "was complete when Mr. Worl assaulted Mr. Hill when he exited his car" and that the subsequent slashing comprised facts supporting the second degree murder attempt. Worl II, 74 Wash.App. at 616, 875 P.2d 659.
Accordingly, the Court of Appeals correctly rejected the exceptional sentence imposed by the trial court on the charge of malicious harassment because it was based on the same facts which supported the charge of attempted second degree murderthe number of wounds inflicted on Hill and the persistence of the attack. These factors, the court reasoned, necessarily related to the attempted second degree murder which arose as a result of the numerous wounds suffered by Hill. Use of these factors, the court concluded, violated the real facts doctrine, thus requiring vacation of the exceptional sentence. Recharacterizing the facts relied on both in Worl I and Worl II, the majority says, "[T]he court based its reasoning on its prior holding that the crime of malicious harassment was complete when the victim exited his car because it was only after he exited his car that the physical assault occurred." Majority at 910. The majority then states "the Court of Appeals cannot be correct in its holding that the malicious harassment ended before the victim sustained injury" because the State charged Worl with RCW 9A.36.080(1)(a), which requires proof of an injury. Majority at 911. Simply reading the statement of *915 facts from the Court of Appeals, however, demonstrates the Court of Appeals did not make such a holding.
After rejecting what the majority mistakenly views as the facts relied upon by the Court of Appeals, the majority reasons that since the jury must have found that some physical injury was attributable to the malicious harassment then the aggravating factors of deliberate cruelty and multiple injuries can aggravate the malicious harassment penalty. The majority does not, unfortunately, reveal what conduct comprised the crime of malicious harassment. Nor does the majority disclose what evidence supported the charge of attempted second degree murder. It should go without saying that sufficient evidence of each crime must exist to support a conviction on each charge. Because the majority never discusses the point at which the malicious harassment became attempted second degree murder, it never analyzes the violation of the real facts doctrine alleged by the defendant and relied upon by the Court of Appeals to reverse the exceptional sentence.
As the Court of Appeals recognized, the real facts doctrine prohibits the trial court's reliance on the facts which constitute attempted second degree murder as aggravating factors to support an exceptional sentence for malicious harassment. RCW 9.94A.370(2) provides that
Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390....

See also Worl II, 74 Wash.App. at 616, 875 P.2d 659 (citing State v. Woody, 48 Wash. App. 772, 779, 742 P.2d 133 (1987), review denied, 110 Wash.2d 1006 (1988)). RCW 9.94A.390 does not apply here and there was no stipulation. Therefore, under the statute there is no basis to go outside the presumptive range in this case.
The Court of Appeals in Worl II correctly concluded that the exceptional sentence in this case violates the real facts doctrine because the slashing injuries to the victim in support of the attempted second degree murder charge cannot be used to aggravate the sentence for the malicious harassment charge.

SAME CRIMINAL CONDUCT
The trial court in this case found the two crimes of malicious harassment and attempted second degree murder were separate and distinct. Worl II, 74 Wash.App. at 615, 875 P.2d 659. Accordingly, the trial court declined to hold the two crimes constituted "same criminal conduct." The Court of Appeals affirmed the trial court in this issue in Worl I. Worl I, 58 Wash.App. at 451, 794 P.2d 31.
The majority disagrees with the trial court and the Court of Appeals in Worl I. It finds that the two crimes indeed constitute "same criminal conduct." By reaching this conclusion, the majority overrules Worl I in part. Majority at 911.
The majority's analysis of the facts, of course, leaves it with no choice but to overrule the trial court and Worl I. In order to affirm the trial court's exceptional sentence, the evidence of numerous wounds and repeated slashing must be tied to the crime of malicious harassment. The majority thus blurs the facts underlying the two charges to justify its conclusion that the ultimate holding of Worl I, affirming the exceptional sentence for the malicious harassment charge, was not clearly erroneous. Unfortunately, when the majority melds the facts of the malicious harassment and the attempted second degree murder, they become so inextricably tied that the two crimes then must be viewed as the "same criminal conduct" because they are "intimately related" with "no substantial change in the nature of the criminal objective." State v. Dunaway, 109 Wash.2d 207, 213, 743 P.2d 1237 (1987), supplemented in, 109 Wash.2d 207, 749 P.2d 160 (1988) (citing State v. Edwards, 45 Wash. App. 378, 382, 725 P.2d 442 (1986)). If the majority correctly applied the real facts doctrine, the "same criminal conduct" issue would not arise.

REMAND INSTRUCTIONS
Finally, the majority has remanded this matter to the trial court for resentencing *916 with instructions that the trial court may reconsider whether to run sentences for these crimes consecutively.
RCW 9.94A.400(1)(a) discusses the treatment of current offenses and concurrent/consecutive sentencing. The section distinguishes between current offenses which are "same criminal conduct" and those which are not. Specifically, it provides that if current "offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently." RCW 9.94A.360(6)(a) provides that "[p]rior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score." (Emphasis added.) Read together, RCW 9.94A.400(1)(a) and 9.94A.360(6)(a) strongly suggest that treating current offenses involving "same criminal conduct" as one offense precludes sentences from being run consecutively.
This court has never addressed the question of whether offenses which encompass "same criminal conduct" may be run consecutively, nor have the parties briefed the issue. In fact, the issue only arises because the majority rejects the Worl I decision and declares the offenses in this case encompass "same criminal conduct." I do not agree that the court should essentially decide this issue without briefing by the parties. Moreover, questionable instructions regarding consecutive sentences ensures a Worl III.
Worl II correctly decided that an exceptional sentence is precluded here by the real facts doctrine and, accordingly on remand, the trial court should impose a standard range sentence.
ALEXANDER and JOHNSON, JJ., concur.
NOTES
[1] Worl's conviction for attempted second degree murder and his standard range sentence of 120 months are not issues in this case.
[2] The court entered the following findings of fact on April 7, 1992:

That the following aggravating circumstances existed in this case:
A. The defendant's conduct constituted multiple incidents or injuries in that a number of injuries were inflicted on the victim, Ray Hill, one being very serious, by the defendant with a knife.
B. The defendant's conduct constituted deliberate cruelty in that this was an attack on the victim by two people and what appears to be a persistence in the attack because as the victim attempted to run, he was chased and again attacked.
C. That this was not the "typical" Malicious Harassment case in that the injuries were substantial and the conduct of the defenant [sic][was] beyond what could normally be expect[ed] to occur in a typical case.
Clerk's Papers, at 11-12.
[3] Worl assigned three additional errors, but they are not relevant.
[4] This court in Folsom, for instance, specifically engaged in an analysis to determine if a prior decision had been erroneous before proceeding to "correct" it. Folsom, at 266-73, 759 P.2d 1196.
[5] RCW 9.94A.370(2) reads, in pertinent part: "Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation."
[6] According to Worl, the Court of Appeals felt compelled to analyze when the malicious harassment offense ended and when the attempted second degree murder offense began in response to Worl's argument that he could not be punished twice for the same criminal conduct in violation of the constitutional prohibition against double jeopardy. See Worl I, at 449-50, 794 P.2d 31 (concluding that double jeopardy not implicated because the intent necessary for conviction of each offense is different). Multiple punishments for the same offense are permissible, however, so long as they occur in the same proceeding. Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 679-80, 74 L.Ed.2d 535 (1983) (where a legislature specifically authorizes cumulative punishment, regardless of whether the same offense underlies both punishments, a prosecutor may seek cumulative punishment under such statutes in a single trial); United States v. McCaslin, 863 F.Supp. 1299, 1301 (W.D.Wash.1994).
[7] We review under the clearly erroneous standard whether the reasons a sentencing court supplies to justify an exceptional sentence are supported by the record. We review as a matter of law whether the trial court's reasons justify the sentence. State v. Pryor, 115 Wash.2d 445, 450, 799 P.2d 244 (1990).